LESSEE OF ROBERT W. SMITH AND CAREY. W. BUTT, PLAINTIFFS
IN ERROR, *v.* WILLIAM McCANN.

In Maryland, the distinction between common law and equity, as known to the
English law, has been constantly preserved in its system of jurisprudence.

The statute of George the Second which made lands in the American colonies
liable to be sold under a *fieri facias* issued upon a judgment in a court of
common law, did not interfere with this distinction, and under it a legal estate
only and not an equitable interest could be seized under a *fi. fa.*

In 1810, an act of Assembly was passed making equitable interests subject to
this process.

But the purchaser at the sale of an equitable interest under this process only
buys the interest which the debtor had, and thus becomes the owner of an
equitable and not a legal estate.

It is not, however, every legal interest that is made liable to sale on a *fi. fa.* The
debtor must have a beneficial interest in the property, and not a barren legal
title held in trust.

In the action of ejectment, in Maryland, the lessor of the plaintiff must show a
legal title in himself to the land which he claims, and the right of possession
under it, at the time of the demise laid in the declaration and at the time of
the trial.   He cannot support the action upon an equitable title, however
clear and indisputable it may be, but must seek his remedy in chancery.

Where there was a deed of land to a debtor in trust which conveyed to him a
naked legal title, he took under it no interest that could be seized and sold by
the marshal upon a *fi. fa.;* and the purchaser at such sale could not maintain
an action of ejectment under the marshal's deed.

But the plaintiff in the ejectment suit offered evidence to prove that the trusts
in the deed were fraudulent, and that the debtor purchased the land and pro-
cured the deed in this form in order to hinder and defraud his creditors.   And
this proof was offered to show that the debtor had a beneficial interest in **the
property, liable to be seized and sold for the payment of his debts**

This parol evidence could not be introduced to enlarge or change the legal estate of the grantee against the plain words of the instrument.

If the evidence were admissible, the fraudulent character of the trusts, as against his creditors, could not enlarge his legal interest beyond the terms of the deed. Although the debtor may have paid the purchase money, that circumstance did not establish a resulting trust in his favor.

The lessors of the plaintiff had a plain and ample remedy in chancery, where all the parties interested could be brought before the court.

The instruction of the court below was therefore correct, that the plaintiff could not recover in the action of ejectment.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

The facts are stated in the opinion of the court.

It was argued by *Mr. Davis* and *Mr. F. L. Smith* for the plaintiffs in error, and *Mr. Campbell* and *Mr. Malcolm* for the defendants.

The points on behalf of the plaintiffs in error were the following. The counsel contended that the instruction given by the court below was erroneous, and cited these authorities:

McMechen *v.* Marman, 8 G. and J., 57, 73, 74, 75.

Jackson *v.* Graham, 3 Caines's R., 188.

Jackson *v.* Scott, 18 Johnson's R., 94.

Jackson ex dem. Cary *v.* Parker, 9 Cowen R., 85.

Jackson ex dem. Ten Eyck *v.* Walker, 4 Wendell, 462.

Culbertson *v.* Martin, 2 Yeates, 443.

Remington *v.* Linthicum, 14 Peters, 84.

Young *v.* Alger, 3 Watts, 223, 227.

Jackson *v.* Bush, 10 John., 223.

In ejectment against a defendant in an execution, or those claiming under him, the purchaser of land at a sheriff's sale, having complied with the terms of sale, is entitled, as plaintiff, to recover the possession against said defendant or his alience, and the defendant will not be permitted to controvert the title by showing it to be defective, or by setting up a better outstanding title in a third person.

Remington *v.* Linthicum.

McMechen *v.* Marman.

Lessee of Cooper *v.* Galbraith, 3 Wash. Cir. Ct. R., 546, 550.

Jackson *v.* Chase, 2 John. C. L. R., 82.

Jackson *v.* Pierce, Id., 221.

Jackson *v.* Deye, 3 John. C. L. R., 422.

Bayard *v.* Colfax et al., Cox's Digest S. C. U. S., 272, sec. 41.

Jackson *v.* Davis, 18 John. C. L. R., 7.

Jackson *v.* Van Slyck, 8 John. C. L. R., 486.

The trusts in the deed from Brown and wife to Richard D. Fenby being fraudulent and void, the deed passed an absolute title to Fenby of the land in controversy.

Bacon's Abr., vol. 2, Bouvier's Ed., 298, 305.

Hughes *v.* Edwards, 9 Wheat., 493.

That the terms of trust, in the deed from Brown and wife to Fenby, not being established by any evidence, *aliunde*, the said trust can be considered as existing, if at all, only from the date of the deed.

Hill on Trustees, top pp. 86, 87, note 2.

The counsel for the defendant in error made the following points:

1. This action of ejectment being brought in Maryland, and the common law in that State being unchanged, the plaintiff must show, in evidence, a legal title to enable him to recover. The Maryland statute, (1810, ch. 160,) which authorizes a sale on execution at law, of equitable estates, does not change an equitable into a legal title, and the purchaser must assert his rights in their appropriate form.

Carroll *v.* Norwood, 5 H. and J., 155.

Wilson *v.* Inloes, 11 Gill and Johnson, 351.

Hammond *v.* Inloes, 4 Maryland, 138.

2. To show themselves seized of a legal title, the plaintiffs in error give in evidence the deed from Brown and wife to Fenby, conveying the property which was levied on under the judgment against Fenby, and sold to the plaintiff's lessor.

This deed, (Rec. 25,) which conveyed the legal title to Fenby, conveyed it to him in trust for his wife and children, and gave him but a dry legal title, with no beneficial interest in himself, and so vested nothing in him which could be attached or taken in execution upon process against him.

Houston *v.* Newland, 7 Gill and Johnson, 493.

Aware of this insuperable difficulty, the plaintiffs in error seek, by a charge of fraud against the deed, to extinguish the trust, and thus convert the legal ownership of Fenby into a beneficial one. But if the deed be void against creditors, by reason of the trust for Fenby's wife and children, the statute of Elizabeth avoids it *in toto*, and the plaintiffs in error cannot, at the same time, set it up and destroy it. If the deed be wholly void, for fraud or any other cause, then the foundation of the plaintiff's title fails, for without it Fenby had no estate. If it be relied on as the source of Fenby's title, it must be taken as it is.

Mackie *v.* Cairns, Hopkins, 405.

5 Cowen, 580.

5 Shepley, 369.

4 Yerger, 164.

2 Sanford C. Rep., 630, Goodhue *v.* Berry.

6 Gill and Johnson, 231, State *v.* Bank of Maryland.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case comes up upon a writ of error to revise the judgment of the Circuit Court for the district of Maryland, in an action of ejectment brought by the plaintiff in error against the defendant to recover certain lands lying in that State.

The plaintiff, in order to show title to the land claimed, offered in evidence, that Smith and Butt, lessors of the plaintiff, having sold cotton to Fenby & Brother, of Baltimore, in 1857, drew on them for the sum due, and their bills were protested to the amount of $13,708. They thereupon brought suit on the 3d of June, 1857, and recovered judgment in the Circuit Court on the 6th of April, 1858; and on the 10th of the same month they issued a *fieri facias*, which was on the same day levied by the marshal on the land in controversy; and after-

wards, on the 2d of September next following, sold at public auction. At this sale the lessors of the plaintiff were the purchasers, and received from the marshal a deed in due form.

The plaintiff further proved that a certain Robert D. Brown was seized in fee of the land at the times hereinafter mentioned, and read in evidence a deed from him and his wife, dated April 6th, 1857, whereby they conveyed it to Richard D. Fenby, one of the defendants, against whom the judgment was afterwards obtained, stating at the time he offered it in evidence, that he impeached the trusts in the deed for fraud, and intended to show such trusts to be void against him.

The deed purports to be in consideration of $7,800.50, and recited that the land was purchased by Fenby, from Brown, on the 13th of March, 1852, and then grants to Fenby, "*as trustee,*" the lands in question in fee simple, in "trust" for the sole and separate benefit of Jane Fenby, the wife of the said Richard D. Fenby, for and during the term of her natural life, in all respects as if she was a feme sole, free from all liability for the debts of her husband, and from and immediately after the death of the said Jane Fenby, in trust for such child or children, and descendants of a deceased child or children of the said Jane, as she may leave living at the time of her death. Such child, children, and descendants, to take *per stirpes.*

The deed gives authority to Fenby to sell and dispose of any part of the trust property, and to invest the proceeds in safe securities upon the same trusts.

The plaintiff further offered evidence tending to prove that Fenby was hopelessly insolvent when this deed was made, and that he was in possession of the land from the time he purchased it in 1852.

The defendant, McCann, then read in evidence a deed from Fenby to him, dated March 23d, 1858, purporting to be made in execution of the power conferred by the trust deed, and conveying the property in fee simple in consideration of twenty-two thousand dollars.

And the plaintiff thereupon offered evidence tending to show that this deed was intended to cover the previous fraud of the one to Fenby; that McCann was privy to this design,

and co-operated in it; that he paid no money; and that notwithstanding this deed, Fenby continued in possession after the land had been advertised for sale by the marshal, and that the possession was delivered to McCann only a few days before the sale was actually made.

The defendant offered evidence for the purpose of rebutting the charge of fraud against Fenby and himself, and upon the whole testimony as offered, several instructions to the jury were moved for by each of the parties, which were all refused, and the following instruction given by the court:

"The deed from Robert P. Brown to Richard D. Fenby, of the 6th of April, 1857, conveyed only a naked legal interest to said Fenby, which could not be levied on and sold under a *fi. fa.* issued on a judgment against him; he having no beneficial interest therein. And as the plaintiff, to sustain this action, has offered the said deed in evidence, and as without it there is no evidence of any legal title whatever in said Fenby at the date of the levying of said *fi. fa.*, or at any other time, the plaintiff cannot recover in this action."

As this instruction disposed of the case, it is unnecessary to state at large the prayers offered by the respective parties, or the testimony upon which they respectively relied to prove or disprove the imputations of fraud.

In discussing the question thus presented by the decision of the court below, it is proper to state, that in Maryland the distinction between common law and equity, as known to the English law, has been constantly preserved in its system of jurisprudence; and the action of ejectment is the only mode of trying a title to lands. And in that action the lessor of the plaintiff must show a legal title in himself to the land he claims, and the right of possession under it, at the time of the demise laid in the declaration, and at the time of the trial. He cannot support the action upon an equitable title, however clear and indisputable it may be, but must seek his remedy in chancery; nor is the defendant required to show any title in himself; and if the plaintiff makes out a *prima facie* legal title, the defendant may show an elder and superior one in a stranger, and thereby defeat the action.

The law upon this subject is briefly and clearly stated by the Court of Appeals of the State, in 11 Gill and Johnson, 358, and 4 Maryland Reports, 140, 173.

We state the law of Maryland upon this subject, because very few of the States have preserved the distinction between legal and equitable titles to land. And in States where there is no court of equity, the courts of common law necessarily deal with equitable interests as if they were legal, and exercise powers over them which are unknown to courts of common law, where a separate chancery jurisdiction is established. Cases, therefore, decided in States which have no courts of equity, as contradistinguished from courts of common law, can have no application to this case so far as trusts or any other equitable interest is involved. And even in States where the chancery jurisdiction has been preserved, the decisions of their respective courts do not always harmonize in marking the line of division between law and equity. And as the title to real property, whether legal or equitable, and the mode of asserting that title in courts of justice, depend altogether upon the laws of the State in which the land is situated, cases like that now before the court are questions of local law only, in which we must be guided by the decisions of the State tribunals.

Since the passage of the act of George 2d, which made lands in the American colonies liable to be sold under a *fi. fa.* issued upon a judgment in a court of common law, the process of extent has fallen into disuse, and is regarded as obsolete in Maryland. But this statute did not interfere with the established distinction between law and equity, and an equitable interest could not be seized under a *fi. fa.* until the law of Maryland was in this respect altered by an act of Assembly of the State in 1810. But this law does not convert the equitable interest into a legal one, in the hands of the purchaser. He buys precisely the interest which the debtor had at the time the execution was levied; and if he purchased an equitable interest and desires to perfect his title, he must go into equity, where the court will decree a conveyance to him from

the holder of the legal title, if he shows that the debtor was entitled to it at the time of the levy.

But the statute of George 2d, which authorized the sale of lands under a *fi. fa.*, did not authorize the sheriff to deliver them, nor the court to issue the writ of hab. fac. poss. upon the return of the process. And the result of this was, that the purchaser was compelled to bring an ejectment to obtain the possession, in which, as we have already said, he must show a legal title to the land; and consequently must show that the debtor, at the time of the levy, had a legal title, and such a title as was subject to seizure and sale under the *fieri facias.* And if the debtor had but an equitable title, the purchaser was compelled to go into equity, and obtain a legal one before he could support an action of ejectment against the party in possession. A more summary process in certain cases has been since provided by a law of the State passed in 1825. But up to that time the principles above stated were the settled law of the State; and remain so, except in so far as they are altered by that act of Assembly. It is unnecessary to state the provisions of that act, because the plaintiff did not proceed under it. He has resorted to the action of ejectment to obtain possession, and cannot recover, unless he can show a legal title to the premises. It is not, however, every legal interest that is made liable to sale on a *fi. fa.* The debtor must have a beneficial interest in the property. And in Houston *v.* Newland, 7 Gill and Johnson, 493, where a party had sold the land to another *bona fide*, but had not conveyed the legal title, the court held that the title remaining in the vendors was a barren legal title, in trust for the purchaser, and could not be sold for the payment of his debts. And a still later case, 10 Gill and Johnson, 443, 451, 452, Matthews *v.* Ward's Lessee, where land had been conveyed to a trustee, in trust for third persons, and the *cestuys que trust* had died without heirs, the court decided that the land escheated to the State, although the heirs of the trustee to whom the legal estate was conveyed were still living, and said that "the rights of such trustee, who is a mere instrument, are treated with no respect, and the State deals with the property as her own."

We proceed to apply these principles to the case before us. The deed to Fenby, in plain and unambiguous words, conveyed to him a naked legal title; he took under it no interest that could be seized and sold by the marshal upon a *fi. fa.;* and the deed of the marshal, therefore, conveyed no title to the lessors of the plaintiff. Standing only upon this title, derived under this deed to Fenby, and showing no other title, he certainly could not recover in an action of ejectment.

But the plaintiff offers evidence to prove that the trusts in the deed are fraudulent, and that Fenby purchased the land and procured the deed from Brown in this form, in order to hinder and defraud his creditors. And he offers this proof to show that Fenby had a beneficial interest in the property, liable to be seized and sold for the payment of his debts.

The proposition to enlarge or change the legal estate of the grantee in a deed, by parol evidence, against the plain words of the instrument, is without precedent in any court of common law. And in the case of Remington *v.* Linthicum, relied on by the plaintiff, the evidence was offered, not to change the estate limited in the grant, but to show that the grant was fraudulent, and utterly void, and conveyed no interest whatever to the grantee named in it. The party offering the evidence did not claim under that deed, but against it. And if, in this case, the evidence was offered for a like purpose, and the deed proved to be fraudulent and void, it would defeat the plaintiff's action instead of supporting it.

He does not, however, offer the parol evidence for this purpose, but offers it to enlarge the estate of Fenby, and to show that he had not merely a barren legal title, but a beneficial interest, which was liable for the payment of his debts. But if the evidence were admissible, we do not perceive how the fraudulent character of the trusts, as against his creditors, could enlarge his legal interest beyond the terms of the deed. It is true he paid the money for the property. And if this circumstance could be supposed to create a resulting trust for the benefit of Fenby, it would be a mere equitable right exclusively within the jurisdiction of a court of chancery, and a court of common law could neither enforce it nor notice it;

and consequently it would not be a title upon which an action of ejectment could be maintained. But it obviously is not a case to which the doctrine of resulting trusts can be applied; for, as between Fenby and the *cestuys que* trust, he can have no equity against the express trusts to which he assented, and which, indeed, according to the plaintiff's allegation, he procured to be made. And when the deed is offered in evidence by the plaintiff, in order to derive to himself a legal title under it, the interests and estates thereby conveyed cannot be enlarged or diminished by testimony *dehors* the deed. The deed must speak for itself.

. If these trusts are fraudulent, the lessors of the plaintiff have a plain and ample remedy in the court of chancery, which has the exclusive jurisdiction of trusts and trust estates. In that forum all of the parties interested in the controversy can be brought before the court, and heard in defence of their respective claims. But as the case now stands, the only interest which the plaintiff seeks to impeach is that of the *cestuys que* trust; yet they are not before the court, nor can they by any process be made parties in this ejectment suit, nor even be permitted to make themselves parties if they desired to do so, and cannot have an opportunity of adducing testimony in defence of their rights. Under such circumstances, an inquiry into the validity of these trusts would not only be inconsistent with the established principles and jurisdiction of courts of common law, but also inconsistent with that great fundamental rule in the administration of justice, which requires that every one shall have an opportunity of defending his rights before judgment is pronounced against him.

. The judgment of the Circuit Court is therefore affirmed.