HITCHCOCK *et al. v.* GALVESTON WHARF Co.

(*Circuit Court, E. D. Texas.*   March Term, 1880.)

1. GARNISHMENT—EQUITABLE DEFENSES—TRUST PROPERTY.
   When a corporation is served as garnishee, under Sess. Laws Tex. 1875, p. 102, in respect to shares of its stock held by a judgment debtor, it may set up as a defense that the stock is held by the latter as a trustee merely, and is not subject to sale for his debts, notwithstanding that such defense is equitable in its nature.

2. MUNICIPAL CORPORATIONS—PUBLIC PROPERTY—LIABILITY FOR DEBTS.
   The property of the city of Galveston in its water front was held for the benefit of the public, and was not alienable without the consent of the legislature, nor subject to be taken under legal process for the city's debts.

3. SAME—STOCK IN CORPORATIONS.
   The sale by the city of its property in the water front to the Galveston Wharf Company, in consideration of certain shares of stock in such company, derived all its validity from the confirmatory act of the state legislature, dated June 23, 1870; and as that act declared that the stock should be held in trust for the inhabitants of the city, and not subject to assignment, pledge, or mortgage, "or any liability for debt whatever," except by consent of four fifths of the qualified voters, the stock is not subject to sale, under process of garnishment, to satisfy a judgment against the city.

**4. SAME—DIVIDENDS.**

The trust attaches to dividends upon the stock as well as the stock itself, and they, too, are exempt from sale for the city's debts.

At Law. Proceeding in garnishment brought by D. G. Hitchcock & Co. against the Galveston Wharf Company to subject certain shares of its stock held by the city of Galveston to pay a judgment against the city. Decree of sequestration refused.

The second and third sections of an act of the legislature of Texas entitled "An act to provide for the sale of the shares in any joint-stock or incorporated company on execution," approved March 13, 1875, (Sess. Laws 1875, p. 102,) provided that—

"In any case where the plaintiff has recovered a final judgment against the defendant, and the same is unsatisfied, if the plaintiff, his agent or attorney, should file an affidavit in the court where such judgment was obtained, to the effect that such judgment is unsatisfied either in whole or in part, and that the defendant is the owner of shares in the capital stock of any joint-stock or incorporated company in this state, and that he knows of no other or a sufficient amount of property belonging to the defendant out of which said judgment can be made, the court in which such judgment is pending should issue a writ of garnishment against such corporation. * * * If, on the coming in of the answer of any such joint-stock or incorporated company, it should appear that the defendant is the owner of any shares in such company or corporation, * * * the court should order and decree a sale of a sufficient portion of the shares of such company, describing them, in such judgment, as shall be sufficient to pay the debt of the plaintiff, and all costs of suit and garnishment."

On May 9, 1879, the plaintiffs recovered in this court a judgment against the city of Galveston for $117,550. On June 9, 1879, an execution was issued on said judgment, and on the same day returned unsatisfied, and said judgment still remains unsatisfied. On the same day Hitchcock & Co. filed in this court a petition, verified by affidavit, in which the foregoing facts were recited, and in which it was alleged that the judgment debtor, the city of Galveston, was the owner of shares in the corporate stock of the Galveston Wharf Company, a company incorporated by the laws of Texas, and residing and doing business in said city of Galveston, and realizing and declaring dividends to its stockholders, including the city of Galveston, and that there was no other sufficient property belonging to the judgment debtor out of which the judgment aforesaid could be made. Thereupon the plaintiffs prayed for a writ of garnishment against the Galveston Wharf Company, requiring it to answer what number of shares of its capital stock was owned by the city of Galveston, and the par value thereof; and also what were its liabilities to the city of Galveston; and also what effects of said city it had in its possession, and what credits and effects of said city there were in the hands of any other person, to the best of its knowledge and belief; and that at its next term this court would order a sale of said shares of stock, that the proceeds thereof might be applied to the payment of said judgment. On the same day (June 9, 1879) a writ of garnishment was issued, and on the next day served on the Galveston Wharf Company. The wharf company, on November 6, 1879, filed pleas to the jurisdic-

tion, demurrers, and an answer to the writ of garnishment, and the affidavit on which it was based.

The answer set forth that at the date of the service of the writ or garnishment the city of Galveston was the owner of 6,222 shares of the capital stock of the wharf company, for which it held a certificate dated March 1, 1869, each share being for the sum of $100. That the foundation and nature of the right and title of the city to said stock was as follows: The property of said wharf company consisted of lands upon the Bay of Galveston, constituting the water front of the city, and extending to the channel, and covering the extension of the streets of the city of said channel portion, and extending from east to west in front of the city from Tenth to Forty-First streets, inclusive, and of wharves built over said lands and a portion of said streets to the channel of the bay and harbor, and in the franchise of collecting tolls and wharfage. That prior to March 1, 1879, the city owned no right or interest in said wharf company, but claimed right to the said water front by reason of a public dedication thereof, and by virtue of an act of the legislature of Texas, December 8, 1851, which authorized it to open to the harbor or channel of the bay all its streets running north and south, and to erect wharves at the ends of said streets, and charge wharfage; and (section 3) to fill up such portions of the water front, lying between ordinary low-tide watermark and the channel on the bay side, as the city might deem necessary for public purposes; and by said act (section 4) the state relinquished to the city all the rights and privileges above mentioned, provided that nothing in the said third and fourth sections should be construed to affect any legal title to wharf privileges held by any persons in said city. That litigation arose between the city and certain claimants of wharf property and privileges, which resulted in a decision, reported in 23 Tex. 349–410, inclusive. That said litigation was revived in 1866, by a new suit commenced by the city of Galveston against the Galveston Wharf Company (which had in the mean time been organized) and a number of other claimants to wharf property. That said suit was finally, on April 1, 1869, compromised and settled between the city and wharf company, which compromise and settlement was embodied in a consent decree made by the court, as follows:

"The Mayor, Aldermen, and Inhabitants of the City of Galveston v. The Galveston Wharf Company. This day the above cause came on to be heard, and leave is granted to both parties to amend their pleadings, and amendments were filed; and thereupon the parties announced themselves ready for trial, and waived a jury, and submitted this cause to the court; and further announced that the said parties, plaintiff and defendant, had agreed upon the terms of a final settlement and compromise between said parties, and that the same should be entered as the decree and judgment of the court herein, all errors and exceptions thereto being waived; and the terms of said judgment and decree appearing to the court to be reasonable and fair, and for the public interests involved: Therefore it is considered, ordered, adjudged, and decreed by the court that the present capital stock of the Galveston Wharf Company, consisting of twelve thousand four hundred and forty-four shares of stock, of $100 per share, amounting in the aggregate to $1,244,400, shall be increased full one half thereof, viz., by six thousand two hundred and twenty-two

shares, of $100 each, amounting to the sum of $622,200, which said stock, of said sum of $622,200, shall be the property of the mayor, aldermen, and inhabitants of the city of Galveston, and the same shall stand and remain on the books of said company as the property of said mayor, aldermen, and inhabitants of the city of Galveston; and the equal, undivided one third of the property of said company to be consolidated and vested in it by this decree shall be owned by said city, and represented by its said stock; and the said stock, and the rights and interests therein, and in said property of said mayor, aldermen, and citizens of the city of Galveston, shall be in trust for the present and future inhabitants of the city of Galveston, and all and every part thereof shall be inalienable, and not subject to conveyance, assignment, transfer, pledge, mortgage, or any liability for debt whatever, or in any other manner than by a vote of four fifths of all the qualified voters of said city in favor of some clear and specific proposition therefor. The dividends and net earnings of said stock shall be regularly paid to said mayor, aldermen, and inhabitants of the city of Galveston, to be disbursed and expended for the public good and benefit of said present and future inhabitants of said city; and that the said plaintiffs shall be represented by three directors in the board of directors of said company, one of whom shall be the mayor of said city, who shall be one of the committee on finance, another shall be an alderman of said city, and the third shall either be an alderman or citizen of said city, both to be elected by the common council of said city; the other six directors of said company to be elected by the remaining stockholders of said company, exclusive of the stock of said city. And it is further expressly understood and agreed between the parties, and is so ordered, adjudged, and decreed, that, in all the stockholders' meetings of said company, no measure shall be adopted, and no vote, act, or proceeding shall be valid, unless by a vote of three fourths of all the stock of said company, exclusive of the said stock of the plaintiff. In consideration of all which it is further agreed between the parties; and is now considered, ordered, adjudged, and decreed by the court, that all the property, rights, and claims, of every kind and description, (except certain lots and property hereinafter specified,) of the said Galveston Wharf Company, and also all the right, title, interest, and claim, of every kind and description whatsoever, of the said mayor, aldermen, and inhabitants of the city of Galveston, in and to all the land and ground extending from the shore or ordinary high-water mark of the island of Galveston, to the channel of the bay or harbor, from and including the street known on the map or plan of the said city of Galveston as 'Ninth Street,' on the east, to and including the street known as 'Thirty-First Street,' on the west, including all the ground known as the 'Flats' within said limits, and also all rights, capacity, powers, and claims of said plaintiffs to build and erect wharves, and take and receive wharfage therefor, at the end of streets now or hereafter running or extending to said channel, be, and the same are hereby, vested in the said Galveston Consolidated Wharf Company, and to be henceforth the corporate property, right, and title of the Galveston Wharf Company, and owned, held, possessed, controlled, used, and administered by said company; all the united and consolidated property, rights, and claims being represented by said aggregate of $1,866,000, the original two thirds thereof held by the present stockholders, and one third by the said plaintiff, in trust as aforesaid."

The answer further alleged that this decree was afterwards ratified and confirmed by an act of the legislature of Texas of date June 23, 1870, as follows:

"An act to confirm the compromises and settlements between the corporation of the city of Galveston, the Galveston City Company, the Houston & Galveston Wharf & Press Company, and the Galveston Wharf Company.

Whereas, on the 8th day of December, 1851. an act was passed by the legislature entitled 'An act granting certain powers to the corporation of Galveston city,' and on the 16th day of February, 1852, an act was passed entitled 'An act supplementary to an act granting certain powers to the corporation of Galveston city,' approved December 8, 1851; and whereas, litigation in regard to the property known as the 'Flats,' within the corporate limits of said city, existed for many years, retarding the improvement and prosperity of said city, which said litigation was compromised and settled by a consent decree, rendered in the district court of Brazoria county on the first day of April, 1869, in a suit wherein the said corporation of the city of Galveston was plaintiff, and the wharf company was defendant, and by a further consent decree, rendered in said district court on the 2d day of November, 1869, in a suit wherein the Galveston City Company was plaintiff, and the corporation of the city of Galveston was defendant, and by a sale by the Houston and Galveston Wharf and Press Company to the said Galveston Wharf Company: Therefore be it enacted by the legislature of the state of Texas that the said compromises and settlements between said parties, and the said decrees of the district court of Brazoria county, recited in the preamble hereto, are in all respects validated, ratified, and confirmed: provided, that this act shall not be construed to affect the right of claim of any person whatever, not a party to said suits, decrees, or compromises. Approved June 23, 1870."

The answer further alleged that the said city had obtained said shares of stock, and now held the same by virtue of said compromise decree so confirmed by the act of the legislature; that since the service of the writ of garnishment dividends had been declared by the wharf company on its capital stock, and that the dividends on the stock of the city amounted to the sum of $4,170.50, which, on account of the service of said writ, it still held, and had declined to pay over to the city; that at the date of the service of the writ of garnishment the wharf company was indebted to the city in no other sum or manner, and had in its possession no other property of said city, and had no knowledge or belief as to any credits or effects of the city in the possession of any other person. And the wharf company claimed, being expressly notified and required by the city to do so, that said shares of stock of the city in the Galveston Wharf Company, and the dividends arising therefrom, were not subject to the process of garnishment. And the wharf company, on its own behalf, claimed that to subject said shares to forced sale, or transfer to private individuals for the debt of the city, would violate the contract under which alone the wharf company consented to the issue of said stock to the city, and the rights and interests of the wharf company and the public in the premises, and the law and public policy of the state. The answer further alleged that the judgment of the said Hitchcock & Co. against the city of Galveston was founded on a contract made on February 28, 1874, and not at any anterior date; and thereupon the wharf company prayed to be dismissed, with its reasonable costs and attorneys' fees.

To this answer Hitchcock & Co. filed a motion to strike out such parts thereof as set up that the stock owned by the city in the wharf company, and the dividends arising therefrom, were exempt from liabilities for its debts, and that a sale thereof would be in violation of the

compromise contract under which the said shares were issued, on the ground that these were allegations of equitable defenses to the writ of garnishment, of which this, as a court of law, could not take cognizance. Hitchcock & Co. also filed exceptions to the answer on the ground that, notwithstanding the averments of the same, the stock of the city and the wharf company, and the dividends accruing therefrom, were subject to the process of garnishment, and should be applied to the payment of their said judgment.

*F. Charles Hume,* for plaintiffs.

*W. P. Ballinger,* for City of Galveston.

WOODS, Circuit Judge. The contention of the plaintiffs, that this court has no jurisdiction of the matter set out in the answer of the garnishee, because they present equitable defenses to the garnishment, and can therefore be considered only by a court of equity, will not hold. By the act of 1875, (Sess. Acts 1875, p. 102,) if, on the coming in of the answer of an incorporated company served as garnishee, it appears that the judgment debtor is the owner of any shares in such company, the court should order and decree a sufficient number of shares in such company, describing them in such judgment, as shall be sufficient to pay the debt of the plaintiff, to be sold. By this enactment it is made the duty of the court to consider whether the answer denies the fact that the judgment debtor is the owner of the stock, and, upon the review of that question, the court is authorized to make, or refuse to make, a decree or judgment directing the sale. The court is called upon to act upon the averments of this answer of the garnishee. If it appears that the judgment debtor has no stock in the company garnished, no sale will, of course, be ordered. If it appears that he is merely a nominal, but not real, owner of the stock, no sale will be ordered. If he holds as a trustee, the ownership being in another party, no sale will be ordered. To suppose that the court would order a sale of property not subject to execution, or to which a sale could confer no title, would be to attribute to the court the making of a vain and fruitless order. When a garnishee answers a writ of garnishment, it is his duty to state, with accuracy and directness, all facts that may be necessary to enable the court to decide intelligently the question of his liability. Drake, Attachm. § 629. To require an answer, and then disregard it because the garnishee showed that while he was apparently, he was not equitably, indebted, and to render a judgment against him on such apparent liability, and thereby compel him to go into a court of equity for relief, would be to do a vain and absurd thing. No court of law is bound to any such course. They have and habitually exercise control over their process so as to prevent wrong and oppression. Suppose that the answer of the garnishee declared that the city of Galveston held stock in the wharf company as trustee for an orphan asylum situate within its limits, would the court order a sale of the stock on the ground that the city held the legal title, and compel the trustee to go into equity to restrain sale? If the contention of the plaintiffs is right, that is what it would be the duty

of the court to do in such case.   The true rule is that if the answer of the garnishee discloses that the property in his possession is not subject to levy, or if it is held by the judgment debtor as a trustee, to refuse the order of sale; and, if the judgment creditor believes that his debtor has an equitable interest in the property, it is his place to file his bill in equity to render it subject to the payment of his debts.   No court of law will order a sale of what is not subject to execution.   That this stock of the city of Galveston in the wharf company is not subject to execution is, in substance, what is set up in the answer of the garnishee.   We believe that this court, as a court of law, ought to consider this objection to an order of sale, and, if made out by the proof, to refuse the order. The motion to strike out such parts of the answer as set up the facts, which, it is claimed, show that the stock of the city in the wharf company is not subject to be sold to pay the debts of the city, because such defense is of an equitable nature, must be overruled.

We are next to consider whether, upon the facts set up in the answer of the garnishee, the court should order a sale of the shares held by the city in the stock of the wharf company.   On the one hand, it is claimed that the answer shows that the city holds the stock as a trustee for the benefit of the present and future inhabitants of the city, and that it cannot, therefore, be seized and sold, and that the very terms by which it holds the stock exempts it from seizure and sale to pay the city's debts. On the other hand, it is claimed that this stock is held by the city just as it holds any other municipal property, and not otherwise; that the trust is not for any specific purpose; that it is held for profit; and that it is not necessary to carry on the city government; and therefore it is liable for the city's debts.   Property held by a trustee is not liable for his debts, and cannot be taken in execution upon judgment against him personally.   It is not every legal interest that is made liable to a sale of a *fieri facias.*   The debtor must have a personal interest in the property.   *Lessee of Smith* v. *McCann*, 24 How. 398.   The question is therefore presented:   Does the city of Galveston hold this stock in the wharf company by such a trust that it is exempt from execution and sale for the debts of the city?   The source of the city's title to the stock is fully set out in the answer of the garnishee.   The city claimed the water front abutting on the harbor.   It claimed the right to extend its north and south streets to the channel of the harbor, and to erect wharves at the harbor ends of the streets, and to charge wharfage, by virtue of an act of the legislature of Texas.   The title of the city to this part of the water front was sustained by the decree of the supreme court of the state, referred to in the answer.   The city also claimed, by the dedication of the original proprietors, those portions of the water front lying between the streets terminating at the harbor.

Now, it is clearly settled that whatever property the city had in the water front it held for the benefit of the public, and that it was not liable for the city's debts.   *Klein* v. *New Orleans*, 99 U. S. 149.   And such property could not be alienated by the city, any more than its streets and squares, save by consent of the legislature.   *Hart* v. *Burnett*, 15 Cal. 530. When the city, therefore, undertook, by the adjustment and compromise

between it and other claimants, which was embraced in a consent decree referred to in the answer, to transfer to a private corporation its title to the water front of the city, it undertook to do what required the legislative sanction to give it validity. In our judgment, the adjustment and compromise derives all its vitality from the ratifying act of the legislature, and the case stands precisely as if, before the making of the adjustment and compromise, the legislature had authorized it to be made upon the terms and conditions embraced therein. It was competent for the legislature, in authorizing the sale of the title of the city to the water front, to prescribe the conditions of the sale, and to direct what disposition should be made by the city of the consideration received for the property sold. This the legislature, by the confirmatory act, has undertaken to do. It has said that the city shall hold the proceeds of the property "in trust, for the present and future inhabitants of the city of Galveston, and all and every part thereof shall be inalienable, and not subject to conveyance, assignment, transfer, pledge, mortgage, or any liability for debt whatever, in any other manner than by the vote of four fifths of all the qualified voters in favor of some clear and specific proposition therefor." These very limitations appear written on the face of the stock certificate issued by the wharf company to the city. The city, by the authority which permitted a sale of the water front, which was itself trust property, inalienable except by legislative consent, and not liable to be taken in execution, is made a trustee of the proceeds of the sale, not for the benefit of the municipal corporation known as the "City of Galveston," but of the present and future inhabitants of the city. Those proceeds are decreed by the legislature inalienable, except upon the vote of four fifths of the qualified citizens, and not to be at all liable for the debts of the city of Galveston.

The plaintiffs in this cause propose to sell this property for a debt of the city, the trustee, and to convey it to the purchaser at a forced sale, without first obtaining the consent of the court thereto. In other words, they propose to disregard the law of the state by virtue of which the city of Galveston holds title to this property. To us it appears that the city of Galveston holds the stock in the wharf company as a trustee for the present and future inhabitants of Galveston. It cannot, therefore, be sold for the debts of the trustee. The legislature of the state has said that the stock shall not be liable for the debts of the city. By what authority can this or any other court say that it shall? The seizure and sale of this stock would also be in violation of the rights of the wharf company, assured by the compromise and adjustment, and which have been recognized and confirmed by the act of the legislature. This stock was issued to the city by the wharf company with the reservations set out in the compromise. These reservations have been adopted by the legislature. To allow a sale of the stock, in defiance of the terms of the compromise, would override rights and privileges conferred on the wharf company by the confirmatory act of the legislature.

To sum up my views on the merits of the case: The title of the city of Galveston to the water front was held by the city as a trustee for the public. *Hart v. Burnett*, 15 Cal. 531. That title was inalienable, save

by consent of the legislature, and the property was not liable to execution and sale for the debts of the city. By the compromise between the city and the wharf company, and the confirmatory act of the legislature, a sale of this property so held by the city for public use to a private corporation was authorized and confirmed. The legislature, by the same act, directed that the proceeds of the sale should be held by the city on the same trust, substantially, as the property sold, namely, for the use of the present and future inhabitants of the city of Galveston, and should not be liable for its debts. In my judgment, the city holds as a trustee, and for that reason the trust property cannot be sold for its debts. The legislature has, in effect, said that it should not be sold for the city's debts, and this is another reason why it cannot be sold on execution against the city. The same reasoning applies to the dividends declared upon the stock. They are not the property of the city, nor liable for its debts. The city is a trustee of the dividends, as of the stock itself. It would be a futile thing for the legislature to say that the stock should not be liable for the debts of the city, if all its fruits and profits could be seized as they accrued, and subjected to the payment of the city's debts. It seems, therefore, to be the duty of the court to refuse any decree or judgment directing the sale of this stock, or a sequestration of its dividends; and it is so ordered.