The Michigan Land & Iron Company (Limited) v. John Thoney and Elizabeth Thoney.

*Adverse possession — Ejectment—Land contract—Mistake — Equity jurisdiction.*

1. The defense of adverse possession interposed by the defendants is held not to have been made out, such possession not having been maintained for the statutory period.

2. The following propositions are summarized from the opinion of Chief Justice Champlin:

a—Possession may ripen into an adverse holding, although the act of taking possession was not hostile in the first instance.

b—Acquiescence by a vendor for the statutory period in the possession of land by a vendee in a land contract, under a claim that the contract had been surrendered and that the land belonged to the vendee, will bar a recovery by the vendor in ejectment.

c—A vendor in a land contract giving the vendee the right to the possession of the land cannot maintain ejectment to recover such possession until he terminates the contract relation by notice of forfeiture and demand of possession, or until the happening of some other fact or circumstance giving him the right to such possession.

d—Courts of law do not possess adequate jurisdiction to correct mistakes in conveyances of real estate.[1]

Error to Marquette. (Stone, J.) Argued November 18, 1891. Decided December 21, 1891.

Ejectment. Defendants bring error. Affirmed. The facts are stated in the opinion.

F. O. Clark, for appellants.

Ball & Hanscom (B. J. Stevens, of counsel), for plaintiff.

Champlin, C. J. Plaintiff brought an action of eject-

---

[1] See *Bush v. Merriman*, 87 Mich. 260, 261.

ment. The defense is adverse possession for 15 years.

In 1874 the Marquette, Houghton & Ontonagon Railroad Company was the owner in fee of section 35, township 50 N., of range 26 W., in Marquette county. This section is fractional, and was divided, in the United States surveyor general's office, into lots numbered 1, 2, 3, and 4, lot 1 being most northerly. On September 3, 1874, defendant John Thoney entered into an agreement with the railroad company for the purchase of this fractional section, for $3,489, He paid $1,000 down, and agreed to pay the balance in three equal annual payments, with interest at 8 per cent., and when paid for in full he was to receive a good conveyance thereof. The land was purchased for a sand-stone quarry, which was upon lot 3 of the section, and Thoney went into immediate possession of lot 3, and commenced quarrying the stone. He built a dock from which to ship the stone, and cleared and cultivated about 10 acres. He erected upon the lot a house and barn and blacksmith shop, and expended upwards of $9,000, besides his own time, in operating the quarry, and in building a permanent dock, and employed sometimes as many as 13 men, and he has continued to occupy the lot ever since, claiming to own it.

Being unable to make payment in full for the section, and desirous of saving lot 3, upon which the stone-quarry was, he made a new agreement upon the 12th of April, 1876, with the railroad company, by which he surrendered lots 1 and 4, as he claims, and the payments already made were to apply on lots 2 and 3, and he agreed to pay $300 down, and give his note at 90 days from April 1, 1876, for $290.43, and he was to have a deed of said lots on payment of the note. This agreement, so far as relates to the surrender, does not appear to have been reduced to writing. By mistake, the agree-

ment covered lots 1 and 2, and did not include lot 3, which mistake was not discovered until a short time previous to bringing this suit. He, however, remained in possession of lot 3, and continued to occupy and claim it as his own. On August 3, 1877, having paid the note, he directed a deed to be made to his wife, Elizabeth, which was done. The deed, however, conveyed lots 1 and 2, instead of 2 and 3. On August 30, 1881, the railroad company conveyed lots 3 and 4 to the plaintiff, who made no claim of ownership until this suit was brought after the 26th day of July, 1890; the defendant Thoney all the while remaining in possession and improving the property and working the stone-quarry and building the dock. There is no evidence that he was ever in possession of lots 1 and 4 after the agreement of April 12, 1876. Some testimony was introduced which tended to show that some officer or agent of the railroad company had recognized that a mistake had been made in the deed to defendant Elizabeth Thoney, but it was not of such a character as to amount to an admission on the part of the railroad company that there was a mistake in fact; and its conveyance of lots 3 and 4 to plaintiff in 1881 can be construed in no other light than the Marquette, Houghton & Ontonagon Railroad Company did not regard the contract to convey lots 3 and 4 to Thoney of any binding force. The testimony affords a strong inference that the railroad company regarded the contract of September 3, 1874, so far as this lot in controversy is concerned, from April 12, 1876, as at an end. This being so, the possession of Thoney became adverse and hostile. It was open, notorious, and distinct, and the railroad company would have had a right to maintain an action against Thoney to recover possession at any time after that date. The railroad company was not misled by the continued possession of defendant, nor

lulled into inaction by his continuing in such possession.
It was not led to believe that Thoney was holding lots 2
and 3 in subservience to any contract it had given him.
His position did not call upon him to notify the railroad
company that he was claiming adversely. The position
which the railroad company took was antagonistic to any
such right held by Thoney in subservience to its claim
of title.

The act of taking possession need not necessarily be
hostile in the first instance. In the case of *Bower v.
Earl*, 18 Mich. 377, Mr. Justice CAMPBELL said:

"Counsel for plaintiff in error relied upon *Bloomer v.
Henderson*, 8 Mich. 395, and *Dawson v. Bank*, 15 Mich.
489, to show that, where a grantor remains in possession
after conveyance, he is to be regarded as holding under
his grantee, and not by any other claim. Those cases
hold that such possession, held without change, after a
conveyance, is not notice of any other claim as against
third persons; but they do not hold that it is incom-
patible with any other right as against the grantee, if
any such right exists, and is not inconsistent in fact
with the existence of the grant. But where there has
been an actual change of possession given by the grantor
to the grantee, which purports to be for the purpose of
carrying the grant into effect, and where the premises
granted are a portion of a larger tract owned by the
grantor, his retention up to a certain line, and his sur-
render beyond it, would naturally indicate that he claimed
ownership to that boundary. Where there is an actual
change, and the grantee is only admitted within certain
lines, the retention of the rest is a distinct occupancy,
and, as a possession, stands on the same footing as if
held by any other person than the grantor. A right of
action would at once arise against the occupant, and that
right, where the latter does not in the interval admit it
in fact, or by implication of law, would be barred by the
lapse of the statutory period of limitation. Where posses-
sion has been thus held for that period, it must be shown
to have been virtually a tenancy undisputed, at some
time in the interval, or the bar is complete. The acqui-
escence which will prevent the running of the statute
must be that of the possessor in the owner's claim, and

not that of the owner in a possession not acknowledged to be held under him. Acquiescence, which is merely inaction, is the very thing which the statute contemplates as creating the limitation which cuts off the right."

The facts in this case are nearly the converse of those in *Bower v. Earl.* Here there was a conveyance of a part of the contracted land to the grantee, but it did not include that portion of which the grantee was in actual possession, and which possession defendants maintained, not under any claim of contract, but under a claim that the contract had been surrendered so far as such lots so held in possession was concerned. Under such circumstances, it is evident that the statute of limitations began to run at the time it was claimed such surrender of the written contract made in 1874 was agreed upon. When Thoney first went into possession it was not a hostile possession, as against his grantor. But if he remained in possession, claiming the lot as his own, after the grantor understood, or the agreement was, that his contract right to purchase that lot had ceased, then his attitude from that time would be hostile to the owner of the legal title; and if the railroad company acquiesced in that possession and claim for a period of 15 years it will be held to have yielded to the claim of defendant.

I find no testimony in the record showing, or tending to show, adverse possession prior to April 12, 1876. Indeed, the testimony of Thoney does not clearly show that the agreement to surrender lots 1 and 4 was not made but a short time prior to the deed of 1877 to his wife. The receipt introduced in evidence by him dated April 12, 1876, states that the money and note were to apply on the purchase price of fractional section 35, township 59 N., range 26 W., "as per contract dated September 3, 1874." And Thoney testifies that it was just before the last payment was due, and just before

the deed was given, that the new arrangement was made. These events were in 1877.

Counsel for defendants contends that Thoney's equitable title under the contract of purchase was sufficient to protect the contractee from being dispossessed by the contractor in an action of ejectment brought by the contractor or those claiming the legal title under it by deed. It is undoubtedly the law, that the vendor of real estate, by contract of sale, where he has by such contract given possession of the premises to the vendee, cannot bring an action of ejectment against his vendee in possession so long as the relation created by the contract between the parties exists. If the vendor wishes to dispossess the vendee in possession under his contract, he must first terminate the contract by due notice of forfeiture and demand of possession, or some other fact or circumstance must have occurred to give the vendor the right of possession. This is founded on the principle that one cannot recover in ejectment unless he had a right of possession at the time of bringing the action. *Van Vleet v. Blackwood*, 39 Mich. 728. In this case defendant claimed to hold adversely to plaintiff, and to its grantor, from April 12, 1876, or at least from the time, whenever it was, that the new arrangement was made. It is of no importance, under such circumstances, that no notice was given of the forfeiture of the contract, or of a notice to quit. But the contract which Thoney produced did not confer the right of possession upon Thoney; "it did not attempt to sever the legal right of possession from the ownership of the fee." *Buell v. Irwin*, 24 Mich. 145. As was stated in *Hendricks v. Rasson*, 49 Mich. 83:

"Public proclamation of denial could not be more pointed or decisive than his conduct."

Nothing is better settled in this State than that in an action of ejectment an equitable title cannot be set up

as defense against a legal title. *Buell v. Irwin, supra; Ryder v. Flanders,* 30 Mich. 336; *Harrett v. Kinney,* 44 Id. 457; *Geiges v. Grenier,* 68 Id. 153. The real defense of the defendants in this suit is that there is a mistake in the description of the premises conveyed. This cannot be rectified in this action, for the reason, among others, that the proper parties are not before the court. Neither do courts of law possess adequate jurisdiction in such matters.

The judgment must be affirmed.

The other Justices concurred.