## MORAN v. MORAN.

DEED—MENTAL INCOMPETENCY OF GRANTOR—EJECTMENT.

The deed of a mentally incompetent person, executed before he has been adjudicated to be such, is not void, but voidable only, and therefore cannot be assailed in an action of ejectment. The remedy of the grantor in such case is in equity, where the interests of all parties may be protected.

Error to Wayne; Donovan, J. Submitted May 3, 1895. Decided July 2, 1895.

Ejectment by William G. Moran, by John H. Thomas, his general guardian, against William B. Moran and another. From a judgment for defendants, plaintiff brings error. Affirmed.

*James H. Pound,* for appellant.

*Edwin F. Conely* and *Orla B. Taylor,* for appellees.

LONG, J. This is an action of ejectment commenced for the purpose of recovering possession of certain lands, and of setting aside a deed given by plaintiff to defendant William B. Moran's grantor, on the ground that plaintiff was incompetent to execute the deed at the time it was

given.    On the trial in the court below, counsel for plaintiff offered to show that,—

"From 1874 up to the year 1886, the plaintiff was a totally incompetent person mentally on the subject of property and property dealings; that in 1874 he was possessed in fee simple of the land described in the declaration, and that he never in any lucid interval executed any conveyance or divested himself of that title; that he was adjudged formally an incompetent person in the year 1887, and subsequent to the making of the deeds from plaintiff to George Hendrie, and from Hendrie to defendant, said Hendrie acting for defendant; that plaintiff intends to offer evidence tending to show to this jury that, at the time of the making of this deed to George Hendrie (April 5, 1882), he was such an incompetent person, and that the present defendant was well aware of these facts; that we are unable to tell what money plaintiff received, if any, with the exception of what has been already testified to by plaintiff's daughter; and that the defendant William Chauvin was simply the tenant in possession of Mr. Moran, defendant, and is made a defendant because the statute requires it; that, so far as the facts and merits on which plaintiff's case is based, we rest upon the fact that plaintiff, Moran, was incompetent to convey property at the time it is claimed that the deed was made by him to George Hendrie, through whom the defendant William B. Moran claims title; that the deed so given was and is an absolute nullity."

After this offer of evidence was made, the court directed a verdict in favor of defendants, on the ground that the proceedings to set aside this deed should be in equity, and not in an action at law.

The facts, so far as developed on the trial, are that on December 13, 1872, the plaintiff and defendant Moran purchased private claim 696 for $6,000; that title was taken in the name of defendant. A division was thereafter made of the tract, plaintiff taking the east half. He at once went into possession with his family, and remained there until about April 5, 1882, when he sold to George Hendrie, and three days later Hendrie sold to defendant Moran. The consideration named in the deed

from plaintiff to Hendrie was $7,500. Upon the trial, plaintiff's counsel stated that he had no evidence upon the question as to whether this consideration was paid, except the cross-examination of defendant. The place was mortgaged for about $4,500. The testimony of plaintiff's daughter shows that plaintiff's wife applied for a divorce from him in the latter part of the year 1881. The sale of the farm was made about the time the divorce proceedings were concluded, and Mrs. Moran got about $900; and it is claimed that plaintiff must have realized something from the sale, as he traveled most of the time after that for the next two or three years. The plaintiff returned to Grosse Pointe, and remained until November 29, 1887, when a guardian was appointed over him as an incompetent, and he was sent to the Retreat at Dearborn.

The only question raised is whether the remedy of plaintiff is in equity. It is not disputed but that the deed was given as claimed, and imports the consideration named; and it also appears that the $4,500 mortgage was paid off, and Mrs. Moran had $900 of the purchase money; and counsel insist that it is apparent that the plaintiff had quite a considerable sum of money from the sale. The sole reason for avoiding the deed is that, at the time it was given, the plaintiff was incompetent to make it. No guardian had been appointed over him at that time, and none was appointed until 1887. As a record title the deed of defendant is perfect; but plaintiff's counsel insists that, while a court of equity might set aside the deed, yet the question is one which is triable in a court of law, before a jury, as well.

We cannot agree with this contention. The record shows conclusively that no adjudication was had upon the incompetency of the plaintiff until after the deed had been executed. The deed was not therefore absolutely void, but voidable. *Wait* v. *Maxwell*, 5 Pick. 217; *Ingraham* v. *Baldwin*, 9 N. Y. 45; *Carrier* v. *Sears*, 4 Allen, 336; *Hallett* v. *Oakes*, 1 Cush. 296; *Chew* v. *Bank*, 14 Md.

299; *Hovey* v. *Hobson*, 53 Me. 453; *Breckenridge* v. *Ormsby*, 1 J. J. Marsh. 236; *Nichol* v. *Thomas*, 53 Ind. 42; *Eaton* v. *Eaton*, 37 N. J. Law, 108. There is not an unanimity of opinion when the deed is merely voidable on the question of the necessity of restoring the purchase money, and placing the grantee in the same position that he occupied before the execution of the deed, in cases where the grantee acted without notice of the grantor's insanity and in good faith. In this State, however, the question is settled that an incompetent person, under such circumstances, is bound to do equity. *Gates* v. *Cornett*, 72 Mich. 420.

It is not insisted in the present case that the defendant should be placed *in statu quo*, as a condition precedent to the commencement of suit; but it is insisted that plaintiff should place himself in that tribunal which, if it finds the deed voidable, and avoids it, can still make the amount paid a lien upon the land. In *Gates* v. *Cornett, supra,* this court set aside the contract, but made the amount of benefit received by the incompetent a charge upon the land. It is true, as contended, that the uniform practice in this State has been to test the validity of deeds, given under the circumstances claimed in this case, by a bill to set them aside. No case is found where, under like circumstances, this court has permitted a deed for which a consideration had been paid, and which appeared to be executed with due formality, to be set aside in an action of ejectment. It has always been done in equity, where the interests of all parties could be protected. The cases of *Winter* v. *Truax*, 87 Mich. 330, and *McKay* v. *Williams*, 67 Mich. 547, relate to deeds, which were *prima facie* fraudulent, being in direct violation of the statute. As stated by this court in *McKay* v. *Williams*: "The transaction bears upon its face its own condemnation; it is *prima facie* void." In the present case the deed is *prima facie* valid. It conveys a perfect legal title, and its effect can be avoided, if at all, only upon equitable grounds.

Counsel for plaintiff cites a large number of cases from other States in which deeds of incompetents have been set aside in actions of ejectment.. But as said by this court in *Harrett* v. *Kinney,* 44 Mich. 457: "The common-law rule, which excludes all defenses in ejectment which are not legal, has been abrogated in many parts of the Union. The courts of the United States, however, still adhere to it. *Fenn* v. *Holme,* 21 How. 481; *Hooper* v. *Scheimer,* 23 How. 235; *Smith* v. *McCann,* 24 How. 398; *Johnston* v. *Jones,* 1 Black, 209; *Foster* v. *Mora,* 98 U. S. 425." It was further said in that case: "And it also remains in force in this State;" and that "a defendant in ejectment cannot interpose to the action at law the merely equitable defense that the plaintiff's title was fraudulently obtained." It appeared that the deed was collusively given in execution of a land con tract, possession of which was surreptitiously obtained in the absence of the party holding it. It was held that this deed "is not absolutely void in law as for fraud, as it passes the legal title to the grantee named; and the contract purchaser cannot cause it to inure to himself, except by showing his equitable right and title as against the grantee, and this showing cannot be made in an action of ejectment."

In *Michigan Land & Iron Co.* v. *Thoney,* 89 Mich. 231, it was said that—

"Nothing is better settled in this State than that in an action of ejectment an equitable title cannot be set up as a defense against a legal title."

In *Paldi* v. *Paldi,* 95 Mich. 410, it was said:

"It is claimed that Justin L. Paldi obtained the deed from the mother of defendant by fraudulent representations. This defense could not be made in an action of ejectment. Upon the execution and delivery of the deed from Angelo Paldi and his wife to Justin L. Paldi, the legal title passed to Justin L. Paldi, and the plaintiff claims under a deed from Justin L. This traces the legal title to the plaintiff."

In the present case the deed passed the legal title to Hendrie. It cannot therefore be attacked in ejectment. If the plaintiff has the right to set the deed aside by reason of his incompetency at the time of its execution, he must proceed in a court where the rights of the parties can be fully adjudicated. This cannot be done except in equity.

The judgment of the court below must be affirmed.

The other Justices concurred.