## PUTNEY *v.* VINTON.

1. EJECTMENT—EQUITABLE DEFENSES—RELIEF TO DEFENDANT.
   In ejectment by a widow for her unassigned dower, a mortgage discharged of record cannot be restored to defeat her claim, though it is inequitable that she should recover.

2. DOWER—BAR—ADVERSE POSSESSION.
   Where a husband, at the time of his death, had lost his title to land by adverse possession, his nonresident widow's dower right therein is also extinguished, since the statute (§ 8938, 3 Comp. Laws) only gives a nonresident widow dower in the lands of which her husband dies seised.

3. SAME—NONRESIDENT WIDOWS.
   Section 8938, 3 Comp. Laws, giving a nonresident widow dower in lands of which her husband dies "seised" gives her dower in lands of which he has the legal right to possession, as well as those of which he has actual possession; there being no legal distinction between the language of that section and section 8918, conferring dower on resident widows.

Case made from Oakland; Smith, J. Submitted April 10, 1906. (Docket No. 42.) Decided July 23, 1906.

Ejectment by Clara Putney against Henry Vinton and

others.   There was judgment for defendants on a verdict directed by the court, and plaintiff appeals.   Reversed.

*Graves, Hatch & Wasey*, for appellant.

*George O. Kinsman*, for appellees.

MOORE, J.   This is an action of ejectment brought September 8, 1905, by a widow for her unassigned right of dower in the undivided half of certain property in Oxford, Oakland county, Mich.   At some time prior to February 21, 1877, Nelson Green was the owner in fee simple of a hotel building and grounds in Oxford, known as the "Commercial Hotel Property," and he had conveyed the property to James R. Sutherland by a deed recorded on that date.   Sutherland gave Green a purchase-money mortgage for $3,700 on the property, payable in 10 annual installments from date, and this mortgage was recorded December 27, 1876.   Sutherland sold off two pieces from the property and secured a release of the mortgage, so far as it affected these pieces, and paid $500 on the principal of the mortgage.   Kile and wife, on May 2, 1878, conveyed the property by a warranty deed to Daniel Ramsdell and Frank J. Putney.   The consideration was $4,000. The conveyance was made subject to the mortgage, although the grantees did not assume it.   Daniel Ramsdell was the father-in-law of Frank J. Putney.   Clara Putney, the plaintiff, was his daughter, and is the widow of Putney.   Ramsdell and Putney took possession of the hotel early in 1878.   In March, 1879, Frank J. Putney and the plaintiff moved to Conneaut, Ohio, leaving Ramsdell in possession of the property.   While he was in possession in the winter of 1882 and 1883 the hotel burned.   It was insured, and the policy was assigned by Ramsdell to one of his creditors.   The check for the loss was made payable to Ramsdell and the creditor jointly.   The insurance covered also the personal property in the hotel, but whether it covered more than Ramsdell's undivided half of the building does not appear.   Later defendant Vinton en-

tered into negotiations for the purchase of the property with Mr. Silas T. Fenn, who was an attorney at law and acted for Green, the mortgagee, the latter being a non-resident. Fenn procured a quitclaim deed from Ramsdell and wife, to defendant Vinton, covering all the property, for the expressed consideration of $40 which deed was dated July 9, 1883, and recorded July 23, 1883. On January 28, 1884, Vinton and wife executed and delivered to Green a quitclaim of the same property for the expressed consideration of $100. December 22, 1883, Green, the mortgagee, executed a complete discharge of the mortgage. March 1, 1884, Green and wife executed and delivered to Vinton a warranty deed for the expressed consideration of $1,000, which deed and the discharge of the mortgage were both, at the same time, delivered by Fenn, as attorney for Green, to Vinton. No other consideration was paid to Green for the deed and the discharge of the mortgage, and this deed and the discharge of the mortgage were duly recorded on April 12, 1884. Vinton paid only $700 for the deed and discharge. Mr. Vinton never examined the records or employed any one to do so, and knew nothing of the outstanding Putney title, the business having been done entirely through Green's attorney. There was never any foreclosure of the Green mortgage. Vinton, after his deed from Green, cleared off a little patch of the rubbish and piled wood and stone on the property from time to time. He also permitted people to use it for picnic purposes, it being vacant ground. He also paid all the taxes on the property. In 1891 Vinton sold the portion of the property in dispute in this case to Joseph Powell, who thereupon commenced and completed the erection of an opera house on the property. Afterwards Powell deeded back to Vinton, and the latter, in the spring of 1905, deeded to defendants Samuel C. Axford and Elizabeth Axford. Later Samuel C. Axford deeded to his wife, the defendant Elizabeth Axford. At the commencement of this suit the Axfords were in possession. After Frank J. Putney and wife left Oxford,

they never returned again. Plaintiff claims they paid no further attention to the property, supposing it still to be in possession of their father and mother, and not wishing for family reasons to require a settlement during the lifetime of the latter. Frank J. Putney died·in Cleveland, Ohio, on May 6, 1897. Daniel Ramsdell died at Clifford, Lapeer county, Mich., on September 4, 1899. Plaintiff never released her dower right, and claims she knew nothing about the various deeds aforesaid, or that any one was in possession of the property claiming adversely and never had any notice of such claims, except such notice as the law may presume from the above facts, until she received a request to execute a deed in the spring of 1905.

The defendants, under the provisions of sections 10995 and· 10996, 3 Comp. Laws, filed a claim in writing for compensation for buildings and improvements erected by them or their grantors, and asked a finding of the increased value of the property by reason of such improvements. Plaintiff thereupon filed a request under the same statute for a finding of what would have been the value of the property, if no such improvements had been made. On the trial defendants presented to the court three reasons why plaintiff's right to recover on the face of the title should be denied :

1. Defendants claimed that the title of Frank J. Putney had become extinguished by adverse possession at the time of his death in 1897.

2. That the Green mortgage must be taken into consideration.in this case to so reduce plaintiff's dower right as to utterly destroy it.

3. That plaintiff, being a nonresident, was only dowered of property of which her husband died seised, under section 8938, 3 Comp. Laws, and that Frank J. Putney did not die seised of the property in question in this case.

The trial court was of the opinion that the second reason was controlling, and, as the mortgage was three or four times larger than the value of the property, that there was no dower right left to the widow under *Snyder* v. *Snyder*, 6 Mich. 470, and directed a verdict in favor of defendants.

If the trial judge was right in this, then the other defenses become immaterial; if wrong, the others demand attention. We think the case of *Snyder* v. *Snyder* is distinguishable from this case. In that case the mortgagee became the owner of the equity of redemption. His mortgage was not discharged of record. The only way it was discharged, if at all, was by merger. Here the mortgagee became the purchaser of the equity of redemption owned by Ramsdell, but did not become the owner of the equity of redemption owned by Putney. In this case he also discharged his mortgage of record. It is clear he was paid nothing for doing this, and it is probable it was done by the advice of Mr. Fenn, supposing it was the way to give Mr. Vinton a good title. It is just as inequitable that the widow should profit by this transaction, if the fact is, as we suppose above, as it was in the case of *Snyder* v. *Snyder*, but the mortgage which was discharged cannot be restored in an action of ejectment. This can be done only on the chancery side of the court. *Buell* v. *Irwin*, 24 Mich. 145; *Ryder* v. *Flanders*, 30 Mich. 336; *Harrett* v. *Kinney*, 44 Mich. 457; *Geiges* v. *Greiner*, 68 Mich. 153; *Gates* v. *Sutherland*, 76 Mich. 231; *Michigan Land & Iron Co.* v. *Thoney*, 89 Mich. 226; *Paldi* v. *Paldi*, 95 Mich. 410; *Moran* v. *Moran*, 106 Mich. 8; *Retan* v. *Sherwood*, 120 Mich. 496; *Nowlen* v. *Hall*, 128 Mich. 274; *Porter* v. *Osmun*, 135 Mich. 361.

We now turn to the first contention of counsel for defendants that plaintiff's husband at the time of his death had lost his title by adverse possession and therefore plaintiff's dower right was also extinguished. It is claimed by counsel for plaintiff that—

"'It is a principle universally admitted, that the husband cannot deprive her [the wife] of it [her dower right], and that she can only be divested by authority of the State, or by or in consequence of her own voluntary act.' *Greiner* v. *Klein*, 28 Mich. 12, 17.

"Accordingly it has always been held that adverse possession against the husband, however long continued

during his lifetime, does not affect the wife's right of dower, because she had no authority or power to prevent the husband's laches." Citing a great many cases.

Counsel further say:

" But does this principle apply where the wife is a nonresident and therefore under the peculiar language of our statute is only dowered of lands of which the husband dies seised ? Section 8938, 3 Comp. Laws; *Pratt* v. *Tefft*, 14 Mich. 191; *Ligare* v. *Semple*, 32 Mich. 438. In the cases last cited the husband was disseised by his deed, and we confess we cannot well distinguish them from a case where the husband was disseised by adverse possession sufficiently long continued. In one case, the wife loses her dower right by the deed of her husband over which she had no control, and in the other case she loses her dower right by his laches over which she equally had no control."

In the cases cited the husband had, by deed, conveyed his interest in the land, but the important points of the decisions are in construing the statute to mean that unless the husband died seised of the land the widow had no right of dower. If his title had been ended because some one had acquired it by adverse possession, he was just as much deprived of his seisin in the land as though he had deeded it. We think the cases are alike in principle. But it is said there is no testimony of an adverse holding for so long a time as to ripen into title. We think there was some testimony bearing upon that question, and there may be more upon another trial. Inasmuch as the trial judge held with plaintiff in that respect, we have doubtless said all we need to upon that subject.

We now come to the third question. Is counsel right in saying that because plaintiff and her husband were nonresidents at the time of his death she is entitled to dower only in lands of which he was in the possession ? Counsel argue that, as by the terms of section 8918, 3 Comp. Laws, a resident widow is entitled to dower " in all lands where her husband was seised of an estate of inheritance," while a widow who is an alien is, by the terms of section

8938, entitled to dower in all lands "lying in this State of which her husband died seised," indicates that the legislature intended to indicate a distinction, and that the latter section should be so construed as to mean that the seisin of the husband should be actual, that is, in this case, possession by himself, his tenant or his agent.    We think the word as used here broad enough to mean one who is in actual possession, and also one who has the legal right to possession.    See *Lull* v. *Davis*, 1 Mich., at page 81.

Judgment is reversed, and new trial ordered.

CARPENTER, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.