## M. B. KELSO v. MINNIE A. NORTON *et al.*

### No. 12,799.   (70 Pac. 896.)

#### SYLLABUS BY THE COURT.

1. MORTGAGES—*Void Judicial Sale—Mortgagee in Possession.*
It is the legal right of a mortgagor to retain possession of the
mortgaged premises until a valid decree foreclosing his equity of
redemption is entered, a valid sale made, and deed issued there-
under, but this legal right may be waived or surrendered by con-
sent or agreement of parties, either express or implied. Thus,
when a mortgagor surrenders possession of the premises to a pur-
chaser at a void foreclosure sale, who enters under the rights
which he supposed he acquired at the sale, believing himself to
be the owner of the premises, the mortgagor will be deemed to
have waived his legal right to retain possession and to have as-
sented to the possession thus taken, and the purchaser will thence-
forth be deemed to be "a mortgagee in possession."

2. ——— *Ejectment will not Lie against Mortgagee in Posses-
sion.* An action for the recovery of real property in the nature
of ejectment by the heirs at law of a deceased mortgagor will not
lie against a mortgagee in possession, the mortgage debt remain-
ing unpaid, although at the time of the commencement of such
action a foreclosure of the mortgage would be barred by the
statute of limitations. In such case, a finding that defendant is
"a mortgagee in possession" and the mortgage debt unpaid will
defeat a recovery. Resort must be had to an action to redeem
the premises from the mortgage debt.

Error from Chase district court; J. JAY BUCK,
judge *pro tem.* Opinion filed December 6, 1902. Re-
versed.

#### STATEMENT.

THIS is an action of ejectment tried by the court be-
low without the intervention of a jury. Separate find-
ings of fact and conclusions of law therefrom were
made by the court. These findings sufficiently dis-
close the nature of, and the facts involved in, the case,
and the only questions of law we are called on to de-
termine arise on the findings. They are as follows:

"1. On and prior to July 16, 1887, M. B. Kelso

was the owner of the land in controversy, to wit, section 14, in township 21, of range 9, in Chase county, Kansas, and on that day conveyed the same to H. E. Norton by warranty deed for $3200. Norton paid cash down, $1100, and he and his wife, Helen R. Norton, executed and delivered to Kelso their two promissory notes, one for $1100, due in one year, and the other for $1000, due in two years from date, as the unpaid portion of the purchase-price of said land. The said notes drew eight per cent. interest. At the same time, and to secure the payment of said notes, said Norton and wife executed, acknowledged and delivered to said Kelso a mortgage on said land for $2100, which mortgage was duly recorded October 6, 1887.

"2. Neither of the Nortons, nor any one for them, ever made any payment on either of said notes, nor did they ever pay any of the taxes levied on the said land.

"3. Said Norton at once took possession of the said land under the said deed. At the date of said deed, and for a long time prior thereto, and up to the time of his death, said Norton, grantee, and wife, were continuously in and residents of the city of Emporia, Kan. That said M. B. Kelso, since July 16, 1887, has been continuously absent from and a non-resident of the state of Kansas.

"4. After the maturity of both said notes, to wit, on September 13, 1889, said Kelso, the mortgagee, filed his petition in this court against said H. E. Norton and Helen R. Norton to foreclose said mortgage. A paper purporting to be a summons in said foreclosure suit, drawn in due form and signed by the clerk of said court, but upon which no seal of court was ever impressed, was on September 14, 1889, personally served on both said mortgagors by the sheriff of Lyon county, Kansas. Neither of said defendants in said foreclosure proceedings were ever otherwise served with process, nor did either of them ever, in any manner, appear in said action.

"5. A formal decree of foreclosure and judgment was entered in said action December 30, 1889, for

$2513, to bear interest at eight per cent. per annum, and, after a formal advertisement, the sheriff of said county formally sold said property to the plaintiff, M. B. Kelso, for $1493.36, on April 14, 1890. On April 24, 1890, said assumed purchaser paid the costs of suit and also paid the taxes then due on said land, amounting to $174.34, covering the years 1887–'89. On May 7, 1890, such sale was formally confirmed by the court and a deed ordered. A paper in due form, and purporting to be a sheriff's deed, convey-ing said land to Kelso, was executed and acknowl-edged by said sheriff and delivered to said Kelso on June 7, 1890, and duly recorded June 28, 1890.

"6. That on July 9, 1892, said H. E. Norton died, in said city of Emporia, intestate, and left surviving him his widow, Helen R. Norton, and their two chil-dren, named in the title to this cause. That on May 8, 1893, the said Helen R. Norton died intestate, in the said city of Emporia. That no letters of adminis-tration on the estate of H. E. Norton nor on the estate of Helen R. Norton were ever taken out. That the said plaintiff, Minnie A. Norton, and the said defend-ant, Harry P. Norton, are children of the marriage of H. E. Norton to Helen R. Norton, and are their sole surviving heirs. That no guardian has ever been ap-pointed for either said Minnie A. Norton or Harry P. Norton. That said plaintiff, Minnie A. Norton, ar-rived at the age of eighteen years on the 21st day of February, 1899, and that said Harry P. Norton arrived at the age of twenty-one years October 25, 1895. That said Minnie A. Norton and Harry P. Norton have both been residents of and continuously in the city of Em-poria ever since July 9, 1892.

"7. That said M. B. Kelso, believing himself to be the owner of said land by virtue of the said sheriff's deed, took possession of said land by tenant, and re-tained such posession and still retains such possession. That about March 1 of each of the following years he received as rents and profits from said land the fol-lowing sums for the following years, . . . and in the aggregate, with interest, $1380.40.

"8. Said Kelso, mortgagee, paid taxes on said

Kelso v. Norton.

land, in addition to the payment noted in number five hereof, the following sums for the following years, . . . aggregating, with interest, $1157.10.

"9. This suit was begun October 26, 1899."

"CONCLUSIONS OF LAW.

"1. Everything connected with the foreclosure proceedings, except the filing of a proper petition to foreclose the mortgage, was absolutely void. The summons, for want of a seal, was a nullity. There was, in law, no foreclosure of the mortgage. The notes and mortgage never merged in any judgment; hence the relation of mortgagor and mortgagee existed, at least, until the statute of limitations had run on the notes and mortgage—July 19, 1894.

"2. Up to include the taxes of 1893, the mortgagee had a right to pay the taxes, and did pay $349.90, which should draw twelve per cent. interest, and amounts at this date to $777.69. The payments of taxes for the years 1894 to 1900, both inclusive, amount to $309.09, and the interest thereon at six per cent. to $72.32, or a total of taxes and interest of $1157.10.

"The total rents and interest exceed the taxes and interest by $223.30. As the taxes and rents have, by operation of law, become a sort of mutual open account, I do not think any statute of limitations had run except on the mortgage debt.

"3. Under the circumstances of this case, I do not think Kelso can be treated as a trespasser, nor his payments of taxes as 'voluntary payments.' Because the mortgage debt has become barred, it cannot now be considered as even an equitable claim against the land.

"The plaintiff, Minnie A. Norton, and defendant, Harry P. Norton, should recover the land and said sum of $223.30, excess of rents and interest over taxes and interest, and the costs of this action."

Upon the facts as found, and the conclusions of law made, there was judgment for plaintiff and defendant Norton for possession of the premises, for rents and

profits in excess of taxes paid, and for costs. Defendant Kelso brings error.

*Gleed, Ware & Gleed*, and *Bishop Crumrine*, for plaintiff in error.

*W. A. Randolph*, for defendants in error.

The opinion of the court was delivered by

POLLOCK, J.: Without so deciding, let it be conceded for the purposes of this case, as found and determined by the trial court, that the original summons was not sealed with the seal of the court, and was therefore absolutely null and void, and may be so declared in this purely collateral proceeding. Also, let it be conceded, as a consequence thereof, that no jurisdiction was obtained over the person of the defendants in the foreclosure action, and that all subsequent proceedings, including the decree, sale, and sheriff's deed, were likewise void. What, then, are the rights of the parties? Can this action be maintained and can the judgment entered be upheld?

It was found by the trial court that, after the sale of the premises and the execution and delivery of the sheriff's deed, the purchaser at the sale, Kelso, believing himself to be the owner, took and retained possession of the mortgaged property. Is this finding sufficient in law to constitute Kelso "a mortgagee in possession"? At common law, a mortgagee was entitled to possession and to recover possession from the mortgagor upon condition broken. In this state, by force of statute, a mortgage retains but few, if any, of its common-law attributes. It is a mere security contract, incident to the debt. The mortgagor, both before and after default, is entitled to the possession of the premises. The only legal right of the mortgagee

is to foreclose the equity of redemption and obtain a decree of sale in satisfaction of his debt. While such are the legal rights of the mortgagor and mortgagee in this state, it does not follow that these legal rights may not be changed or waived by agreement, express or implied. If the mortgagor consents to the mortgagee's taking possession of the premises for the better security of his debt, and the mortgagee does take possession, it is clear that the possession thus taken will constitute "a mortgagee in possession."

In the case at bar, the foreclosure proceedings being, as we have heretofore conceded, abortive and void, the mortgagors were under no legal obligation to yield possession to the mortgagee, but might have stood upon their legal rights and refused to surrender possession until a valid foreclosure decree and sale were obtained and a deed and writ of assistance based thereon had issued to place the purchaser in possession. Upon this legal right, however, they did not insist, but acquiesced in the proceedings had and the possession taken thereunder by the purchaser. Hence, they and those claiming under them must be held to have waived their legal right to possession of the mortgaged premises and to have assented to the possession taken by the mortgagee as purchaser at the sale. This is the precise point ruled on in *Rogers v. Benton*, 39 Minn. 39, 12 Am. St. Rep. 613. It was there held :

"Though an attempted foreclosure be abortive as such, it may take effect as a transfer of the rights of the mortgagee to the purchaser at the sale, and to those who claim under him by conveyance of the interest in the premises apparently acquired by such purchaser at the foreclosure sale.

"If the purchaser at such sale, or his assign, go into possession of the mortgaged premises with the

assent of the mortgagor, under the rights supposed to have been acquired under the foreclosure sale, he will be deemed a mortgagee in possession."

In the opinion it was said:

"It follows necessarily from this that a mortgagee, even after condition broken, has no right or remedy except to foreclose his mortgage; that he cannot, merely under his mortgage, either recover or maintain possession of the mortgaged premises. The only logical rule is that, to constitute 'a mortgagee in possession,' the mortgagee must be in possession by reason of the agreement or assent of the mortgagor or his assigns that he have the possession under the mortgage and because of it. The right to take possession under his mortgage being taken away, nothing remains but to foreclose, or else make some arrangement for his better security with the owner of the fee. Having no right to take possession under his mortgage, the mortgagee can get none, except by the agreement or assent of the one who owns that right. This, of course, need not necessarily be express. It may be implied from circumstances. Where the mortgagor expressly abandons possession, his assent that the mortgagee might go into possession under his mortgage might well be implied, especially when he allows him to remain in possession for a considerable length of time without objection. But, after all, the assent, express or implied, of the mortgagor, that the mortgagee may take possession under or because of his mortgage is of the essence of 'a mortgagee in possession.'

"This assent is conclusively proved in the present case. Benton, by his permanent removal from the state, abandoned all personal occupancy or possession. Conant demanded the possession from Mrs. Benton under his mortgage, or by virtue of rights supposed to have been acquired under its foreclosure. She surrendered possession in pursuance of that demand, knowing, as she herself testifies, that Conant was coming in under the mortgage, and that her husband knew it too; and after this entry the Conants, and

those claiming under them, were allowed to remain in possession over ten years, without objection or assertion of any right in themselves by the mortgagors, or any one claiming under them. The fact that Conant claimed the right to the possession under his foreclosure, and threatened legal proceedings to obtain it, and that Mrs. Benton may at that time have supposed that he had that right, does not alter the legal aspect of the case, or render Mrs. Benton's act any less a voluntary surrender of the possession to Conant as mortgagee. Mrs. Conant and those claiming under her had therefore the rights of 'mortgagees in possession'."

In *Cook v. Cooper et al.*, 18 Ore. 142, 22 Pac. 945, it was held:

"If, for any cause in the foreclosure suit, the proceeding is ineffectual to foreclose the mortgage, and the mortgagee purchases at a sale under such void proceedings, and enters into the possession under such sale, his relation to the mortgaged premises is that of a mortgagee in possession."

To the same effect is *Miner v. Beekman et al.*, 50 N. Y. 337; and many other cases of that and other states, where, by force of statutory provisions, the mortgage does not operate as a conveyance, or grant the right to possession of the mortgaged premises, but is only a security for the payment of the debt, may be cited in support of the position here taken. It therefore must be held that Kelso, as mortgagee and purchaser at the invalid foreclosure sale, was entitled to receive whatever protection the law throws around a mortgagee in possession.

What are such rights? Will an action in the nature of ejectment by the heirs of the mortgagor lie to dispossess him of the property until his mortgage debt is paid? Or, will the heirs of the mortgagor seeking to reclaim the property be required to resort

to an action to redeem the property from the mortgage debt, in which action the amount of the debt and all the equities of the parties may be fully investigated, determined, and decreed? It is contended by counsel for plaintiff in error that ejectment will not lie, but that plaintiff, as heir at law, must resort to an action to redeem. Is this contention sound?

Upon this proposition there would seem to be a lack of uniformity in the authorities. While in many cases, under facts somewhat similar to those found in the case at bar, it seems that this court has permitted recovery in an action of ejectment of mortgaged premises against the mortgagee in possession, yet, an examination of these cases will show that the point here presented was neither urged nor determined. (*Richards v. Thompson*, 43 Kan. 209, 23 Pac. 106; *Le Comte v. Pennock*, 61 id. 330, 59 Pac. 641; *Seeley v. Johnson*, 61 id. 337, 59 Pac. 631; *Kager v. Vickery*, 61 id. 342, 59 Pac. 628, 49 L. R. A. 153, 78 Am. St. Rep. 318.) Hence, the decisions therein are not conclusive of the point presented.

It has always been the rule of this court that a defendant in ejectment, even under a general denial, may interpose any defense which he may have, either in its nature legal or equitable, tending to rebut the right of plaintiff to the possession of the premises, or tending to establish the right of defendant to possession. (*Hall's Heirs v. Dodge*, 18 Kan. 277; *Wicks v. Smith*, 18 id. 508; *Clayton v. School District*, 20 id. 256; *Armstrong v. Brownfield*, 32 id. 116, 4 Pac. 185; *Chandler v. Neil*, 46 id. 67, 26 Pac. 470.) This rule, however, does not obtain in the federal courts and in those states where the distinction between actions at law and suits in equity is preserved. (*Fenn v. Holme*, 21 How. 481, 16 L. Ed. 198; *Hooper et al. v. Scheimer*, 23 id.

235, 16 L. Ed. 452; *Lessee of Smith et al. v. McCann*, 24 id. 398, 16 L. Ed. 714; *Foster v. Mora*, 98 U. S. 425, 25 L. Ed. 191; *Land and Iron Co. v. Thoney*, 89 Mich. 226, 50 N. W. 845; *Paldi v. Paldi*, 95 id. 410, 54 N. W. 903; *Moran v. Moran*, 106 id. 8, 63 N. W. 989, 58 Am. St. Rep. 462.) Hence, in those jurisdictions, the equitable right to withhold possession peaceably obtained until payment of the mortgage debt cannot be interposed as a defense in the ejectment action, such defense being not a legal but an equitable defense. (*Humphrey v. Hurd*, 29 Mich. 44; *Newton v. McKay*, 30 id. 380.) In this state all distinctions between actions at law and suits in equity are abolished by section 10 of the code (Gen. Stat. 1901, § 4438). Hence, such equitable defense is, under our practice, admitted.

It being shown by the findings made from the evidence that defendant Kelso is "a mortgagee in possession," can the plaintiff and her defendant brother recover possession of the premises in ejectment without payment of the mortgage debt? It is conceded that the mortgage debt has not been paid. It is admitted that at common law, where the mortgage operates as a conveyance of the title to the property, defeasible upon condition of payment of the mortgage debt, a mortgagee obtaining peaceable possession under his title thus conveyed by the mortgage cannot be ejected, and only a suit by the mortgagor, his heirs, or those holding under him, subject to the mortgage, will lie. Such is undoubtedly the law. But it is insisted by counsel for defendant in error that such is not the rule in those states where a mortgage does not operate as a conveyance of the property, but is a mere incident to the debt secured. This is the legal effect of a mortgage in this and most states of the

union.   The question arising for our determination,
therefore, is, What is the true rule in those jurisdic-
tions where the distinction between actions at law and
suits in equity is abolished, and by statute the mort-
gage conveys no title, but is a mere incident to the
debt?   A decision coming close to a determination of
this question was made in this court in *Cross v. Knox*,
32 Kan. 725, 736, 5 Pac. 32, in which it was said:

"The relation of the defendant to the tract of about
twenty-two acres of land to which the plaintiff holds
the equity of redemption is that of a mortgagee in
possession, and he cannot be dispossessed by an action
at law, and the only means for lawfully obtaining the
possession the plaintiff has, is by a redemption of the
land from the lien of the mortgage.   She had the
right to bring suit in equity to redeem, and this suit
was properly brought for that purpose.   (3 Pom.
Eq. Jur. §§ 1189, 1190.)"

Mr. Jones, in his work on Mortgages, fourth edition,
section 674, says:

"A mortgagor cannot maintain ejectment against
the mortgagee in possession so long as there is any
question whether the mortgage debt has been paid in
full, or there remains any question of account to be
settled between the parties.   He must resort to a bill
to redeem.   .   .   .   Even in states where a mortga-
gee has no right to take possession until foreclosure
is absolute, if the mortgagor voluntarily puts the
mortgagee in possession, his possession is rightful,
and ejectment cannot be brought against him unless
some action is previously taken which will terminate
his right and render his continuance in occupancy
wrongful."

Again, at section 702, the same author says:

"It has already been noticed that in several states
the mortgagee's right, before forclosure, to maintain
ejectment against the mortgagor, or to recover pos-
session in any way, has been taken away by statute.

. . . But even under such statutes it is generally held that a mortgagee, who has gone into peaceable possession of the premises after a default, cannot be ejected by the mortgagor while the mortgage remains unsatisfied."

In the case of *Cook v. Cooper et al.*, supra, it was held:

"Under section 326, Hill's Code, a mortgagee is precluded from recovering possession of the mortgaged premises after forfeiture by action; but if he can obtain possession of such premises in any lawful or peaceable mode, that is, without force, he may retain possession of such premises, as against the mortgagor or any person claiming under him subsequent to the mortgage, until his mortgage debt is paid."

In the case of *Spect v. Spect*, 88 Cal. 437, 26 Pac. 203, it was held:

"A mortgagor who has placed his mortgagee in possession of the mortgaged premises cannot maintain ejectment against him while the debt for which the mortgage was given remains unsatisfied, even though an action by the mortgagee for the recovery of the debt is barred by the statute of limitations."

In the opinion it was said:

"Whenever a mortgagor seeks a remedy against his mortgagee, which appears to the court to be inequitable, whether it be to cancel the mortgage as a cloud upon his title, or to enjoin a sale under the power given by him in the security, or to recover from the mortgagee the possession of the mortgaged premises, the court will deny him the relief he seeks, except upon the condition that he shall do that which is consonant with equity.

"In accordance with these principles, it is a settled rule that a mortgagor cannot maintain ejectment against his mortgagee until the debt is paid. (*Phyfe v. Riley*, 15 Wend. 248, 30 Am. Dec. 55; *Hubbell v. Moulson et al.*, 53 N. Y. 225, 13 Am. Rep. 519; *Fee v.*

*Swingly*, 6 Mont. 596 ; *Roberts v. Sutherlin*, 4 Ore 220 ; *Cooke v. Cooper*, 18 id. 142 ; *Frink v. LeRoy*, 49 Cal. 314 ; *Tallman v. Ely*, 6 Wis. 244 ; *Brinkman v. Jones*, 44 Wis. 512 ; *Sahler v. Signer*, 44 Barb. 614 ; *Madison Av. Bap. Ch. v. Oliver St. Bap. Ch.*, 73 N. Y. 82 ; *Den v. Wright*, 7 N. J. L. 175, 11 Am. Dec. 546 ; *Wells v. Van Dyke*, 109 Pa. St. 335 ; *Duke v. Reed*, 64 Tex. 705 ; Jones on Mortgages, § 715.)

"The debt is not satisfied or paid by mere lapse of time. The statute of limitations is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor. It is available in judicial proceedings only as a defense, and can never be asserted as a cause of action in his behalf or for conferring upon him a right of action. It is to be used as a shield, and not as a sword."

In the case of *Bryan v. Brasius*, 31 Pac. (Ariz.) 519, Chief Justice Gooding, in rendering the opinion, said :

"But it is claimed by appellant that the debt secured by the mortgage was barred by the statute of limitations at the commencement of this action, and therefore need not be paid. I do not think a court of equity would ever allow the statute to have that effect. It would be so inequitable and shocking to all sense of right that a court exercising equitable powers, as this court does, and recognizing equitable defenses in an action of ejectment, would never disturb the possession of a mortgagee in peaceable and quiet enjoyment under legal proceedings, valid or invalid, until the mortgage debt was paid and all other requirements of equity fully met."

The above cases arose in states in which the mortgage was of similar legal effect as in our own. Of like import, see Newell on Ejectment, 11 ; 3 Pomeroy's Equity Jurisprudence, section 1189 ; *Hildreth v. James*, 109 Cal. 299, 41 Pac. 1038 ; *Van Duyne v. Thayre*, 14 Wend. (N. Y.) 234 ; *Phyfe v. Riley*, 15 id. 248 ; *Miner v. Beekman et al.*, 50 N. Y. 337 ; *Fee v. Swingly*, 6 Mont. 596, 13 Pac. 375 ; *Johnson v. Sandhoff*, 30 Minn. 197,

14 N. W. 889; *Stark et al. v. Brown*, 12 Wis. 572; *Den v. Wright et al.*, 2 Hals. (N. J.) 175; *Duke v. Reed*, 64 Tex. 705.

In no jurisdiction where an equitable defense may be interposed to an action in the nature of ejectment for the recovery of real property do we find a different holding. Whether the mortgage there operates as at common law to convey a defeasible title, or as a mere security contract incident to the debt, does not change the rule. In neither case will the mortgagor, or one claiming under him by conveyance subsequent to the mortgage, or by operation of law, be permitted to maintain ejectment against one shown to be a mortgagee in possession of the premises, whether or not, at the time the action is brought to recover possession, the statute of limitations would bar an action by the mortgagee to foreclose his mortgage. Not only is this the law in other jurisdictions having similar statutory provisions with relation to the legal effect of mortgages and the defenses which may be interposed in actions of ejectment, but it so accords with that which is just, right and equitable between the parties in this and all other cases where some technical defect in legal proceedings is relied on to obtain a nullification of such proceedings, and so accords with the acts and acquiescence of the parties therein for many years, that the rule commends itself to our judgment as sound and wholesome. We therefore hold, upon the findings made, plaintiff in error to be "a mortgagee in possession," entitled to retain such possession until the mortgage debt is paid or adjusted. This action of ejectment cannot be maintained against him.

Whether, in the light of the findings made, the heirs, if so advised, may maintain their action to redeem the property from the mortgage debt, is not be-

fore us for decision, and we do not decide it. Such action, of necessity, would involve a determination of the question whether the sheriff's deed under which plaintiff in error took possession is an absolute nullity, and subject to be so declared in a purely collateral action, and other questions which we have found it unnecessary to consider or determine in this case.

It follows that the judgment must be reversed, with directions to enter judgment for defendant Kelso on the findings. It is so ordered.

All the Justices concurring.