E. J. WALTERS v. JULIA A. CHANCE *et al.*
No. 14,610.    (85 Pac. 779.)
SYLLABUS BY THE COURT.

1. DEMURRER—*Departure in Pleading Not Reached.* Under our code a demurrer will not raise the question of inconsistency or departure in pleading.

2. EJECTMENT—*Defense—"Mortgagee in Possession"—Peaceable Entry.* A quiet and peaceable entry into possession of unoccupied land and the continued possession thereof by a mortgagee, after condition broken, is a complete defense to an action in ejectment by the owner, until the mortgage lien has been satisfied.

Error from Ness district court; CHARLES E. LOBDELL, judge. Opinion filed May 12, 1906. Reversed.

*Wheeler & Switzer,* for plaintiff in error.

*N. A. Yeager,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.:  This was an action in ejectment, commenced September 14, 1903, by the heirs of William Chance.  The answer, while indefinite in its allegations, was an attempt to plead title and possession under a tax deed, and also possession under a past-due and unpaid mortgage.  Upon motion the court required defendant to attach copies of these instruments, which was done by filing an amended answer.  To this answer a demurrer was sustained, and upon leave being granted a second amended answer was filed, to which a demurrer was sustained and judgment rendered thereon for the plaintiffs.  In the second amended answer the defendant relied wholly upon his rights as a mortgagee in possession.

The material allegations of this answer were that on April 1, 1886, William T. Tartar, being the owner of the land in controversy, executed a mortgage thereon for $250, payable to Lew E. Darrow, due April 1, 1891; that the defendant was the owner of that mortgage; that it had not been paid; that on May 3, 1886, Tartar and wife conveyed the land to Alexander McCollum by warranty deed, and on September 3, 1887, McCollum conveyed the land by warranty deed to William Chance, who by a condition in the deed assumed and agreed to pay the mortgage; that on April 1, 1891, William Chance secured an extension of five years from that date for its payment; that for a long time prior to February 11, 1901, William Chance and his heirs had abandoned the land; that on the date last named the land was unoccupied; and that on that date defendant went into possession thereof under his mortgage, and has continued in the exclusive occupancy thereof ever since, claiming to be a mortgagee in possession.

The grounds of plaintiffs' demurrer to this second amended answer were:  (1) That the first and second amended answers were inconsistent with, and a de-

parture from, the defense pleaded in the original answer; (2) that the second amended answer did not state a defense. We are not informed upon which of these grounds the demurrer was sustained, or that it was not sustained for both reasons.

Where a demurrer contains several grounds, and is sustained, it would be much better practice to make the record show upon what ground or grounds the order is made. It is not unusual in practice that only one of the grounds assigned in a demurrer is presented to the trial court, while any one of the other grounds may be relied upon in this court. It would be much fairer to the trial court and the parties, and would simplify the work of this court, if the grounds upon which the trial court relied were stated in the record. In the present case we must assume that the demurrer was sustained on the general ground of insufficiency of the answer, since a departure in pleading is not a ground of demurrer under our statute.

The answer stated that the taxes had been in default since 1893. It is contended that this allegation, coupled with a certain condition in the mortgage, matured the debt in 1893, and that, more than five years having elapsed before the filing of the answer, the defendant's cause of action was barred by the statute of limitations. The condition referred to reads:

"The said first parties agree to pay all taxes and assessments levied on said premises when the same are due, and if not so paid the holder of this mortgage may, without notice, declare the whole sum of money herein secured due and payable at once, or may elect to pay such taxes and assessments and be entitled to interest on the same at the rate of ten per cent. per annum until paid, and this mortgage shall stand as security for the amount so paid, with such interest; but whether the holder of this mortgage elect to pay such taxes and assessments or not, it is distinctly understood that the holder hereof may immediately cause the mortgage to be foreclosed and shall be entitled to immediate possession of the premises and the rents, issues and profits thereof."

If the question depended upon a construction of this provision alone we would hold that the statute did not commence to run until the holder of the mortgage declared the debt due. The holder of the note and mortgage might have declared the debt due and payable upon such default, but he was not compelled to do so, and until he exercised this right the statute of limitations would not start. Two things had to transpire in order to start the statute of limitations—first, a default in the payment of taxes; and second, a declaration of the holder of the mortgage that he had elected to take advantage of the default. That this is the correct construction of this provision is too apparent to become a subject of serious controversy, especially when read with the following condition in the note:

"If default be made in the payment of any interest notes or any portion thereof for the space of thirty days after the same becomes due and payable, or in the payment of any taxes assessed against the real estate mortgaged to secure this loan until the same shall have become delinquent, then all said principal and accrued interest shall, at the option of the legal holder of this bond, become due and payable without any notice of any kind whatsoever."

And with the following in the mortgage:

"That said first parties agree that if the maker of said bond shall fail to pay any of said money, either principal or interest, within thirty days after the same becomes due, or to conform to or comply with any of the foregoing covenants, the whole sum of money herein secured may, at the option of the second party, or his assigns, and without notice, be declared due and payable."

The amended answer stated the mode by which the defendant acquired possession to be as follows:

"This defendant further avers that for several years prior to the 11th day of February, 1901, the lands described in said petition and in said mortgage were vacant and unoccupied, and have been abandoned by the said William Chance and his heirs, and no taxes were

paid upon the same by any of the owners since 1893, and said lands were sold for the taxes of 1893.

"This defendant further avers that on the 11th day of February, 1901, being the owner and holder of the note and mortgage above referred to, and no part of the principal having been paid, and no part of the interest having been paid, in 1895, and believing that said lands had been abandoned by the owners, he went into the peaceable possession thereof for the purpose of better securing the indebtedness due him upon said note and mortgage, which were then a valid and subsisting lien upon the lands, prior and superior to all others, and that afterward he paid up all the taxes past due upon said real estate, and has since paid all taxes and assessments levied upon said lands as the same became due, said taxes so paid by him amounting to the sum of $200; that ever since the 11th day of February, 1901, the defendant has been, and now is, in the actual and exclusive possession of said real estate as the mortgagee and owner and holder of said note and mortgage, claiming and now claims the right in said lands of a mortgagee in possession."

The defendants in error contend that before the holder of a mortgage can invoke the defense of a "mortgagee in possession," in an action of ejectment, he must show that he took possession under his mortgage with the consent of the owner of the land. They also contend that the answer shows that no such consent was obtained; that, therefore, the entry was unlawful; and that an equitable defense cannot be predicated upon an unlawful act. The decisions of this court, where the defense of a mortgagee in possession has been made, do not sustain the contention that the possession must have been acquired with the consent of the owner. In *Kelso v. Norton,* 65 Kan. 778, 70 Pac. 896, 93 Am. St. Rep. 308, the mortgagee got possession under a void foreclosure sale, and it was held that he was a mortgagee in possession. The facts in the case of *Stouffer v. Harlan,* 68 Kan. 135, 74 Pac. 610, 64 L. R. A. 320, 104 Am. St. Rep. 396, were substantially the same, and it was again held that the mortgagee was entitled to the rights of a mortgagee

in possession.    In *Rogers v. Benton,* 39 Minn. 39, 38 N. W. 765, 12 Am. St. Rep. 613, it was said that where the mortgaged land had been abandoned and the mortgagee had gone peaceably and quietly into possession, the owner could not maintain ejectment until he paid the mortgage lien, and that abandonment is an implied assent that the mortgagee may take possession under his mortgage.    In *Cooke v. Cooper et al.,* 18 Ore. 142, 22 Pac. 945, 7 L. R. A. 273, 17 Am. St. Rep. 709, it was said:

"If he [the mortgagee] can make a peaceable entry upon the mortgaged premises after condition broken, he may do so, and may maintain such possession against the mortgagor and every person claiming under him subsequent to the mortgage, subject to be defeated only by the payment of his debt."    (Page 148.)

Whether the holder of a mortgage who is in possession is entitled to make the defense of a "mortgagee in possession," after condition broken, depends upon the equities of each case. No general rule applicable alike to all cases can be stated, except where the mortgagee enters under an express agreement with the owner. Of course, if he obtain possession by force, intimidation, deceit, or fraud, a court of equity will not permit him to profit thereby.    But where, after condition broken, the land is unoccupied, and he enters peaceably, a court of equity will not eject him at the suit of the owner until his lien upon the land shall have been satisfied. Such a rule does equity between the parties, and deprives the owner of the land of no rights.    Mr. Justice Mason, speaking for the court in *Stouffer v. Harlan,* 68 Kan. 135, 74 Pac. 610, 64 L. R. A. 320, 104 Am. St. Rep. 396, said:

"The expression frequently used, that the entry must be lawful, we interpret to mean not that it must have been effected under a formal right capable of enforcement by legal proceedings, but that it must not be through any unlawful or wrongful act, upon which the mortgagee would be estopped to found a right." (Page 145.)

If, after condition broken, the premises are unoccupied, the mortgagee may, if he can do so peaceably, enter into the possession under his mortgage; and he cannot be ejected therefrom by the owner until his mortgage lien has been fully satisfied. The land in question had been sold and deeded for the taxes of 1893. The owners had paid no subsequent taxes. No interest had been paid on the mortgage debt after 1895. In February, 1901, the land was unoccupied and "abandoned," as stated by defendant in his answer. The mortgagee went quietly and peaceably into possession, under his mortgage, and continued therein without objection until this action was commenced—September, 1903. The facts pleaded are ample to sustain the defense of a mortgagee in possession. It was error therefore to sustain the demurrer.

The judgment is reversed, and the cause remanded, with instructions to overrule the demurrer.

All the Justices concurring.

PORTER, J., not sitting.