No. 28,733.

GLENN E. SALLEE, a Minor, by HATTIE B. SALLEE, His Next Friend, *Appellants,* v. F. G. KING (Revived in the Name of JOSIE A. KING) et al., *Appellees.*

(277 Pac. 49.)

Opinion filed May 4, 1929.

*Arch F. Williams,* of Wichita, for the appellants.

*M. A. Merten,* of Augusta, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to quiet title against a deed alleged to be a mortgage, which was in default, and which at the time the action was commenced was unenforceable by foreclosure because of the statute of limitations. The answer was that the deed was not a mortgage, and defendant was in possession. The prayer of the answer was that plaintiffs take nothing, but if plaintiffs were granted relief defendants' interest should be protected. The court found defendant was a mortgagee in possession, found plaintiffs were equitable owners, found the amount plaintiffs should pay to be entitled to reconveyance or cancellation, and rendered judgment accordingly. Plaintiffs appeal.

The deed was a warranty deed, was executed in December, 1919, by Joseph Sallee and his wife Hattie to F. G. King for a consideration of $600, which was paid. On the same day King executed an instrument whereby he agreed to reconvey in one year on payment of $600 and interest at six per cent per annum. No part of the

principal or interest has been paid. The findings that the deed was a mortgage and that King was in possession were sustained by the evidence. Sallee died, and plaintiffs are his heirs. Pending the litigation King died, and the action was duly revived in the names of the proper persons.

Plaintiffs relied for recovery on the provisions of R. S. 60-1802, which reads:

"When any mortgage on real estate has been in default for more than fifteen years, or the lien thereof has ceased to exist, or when action to enforce such mortgage is barred by the statute of limitations, the owner of the land may maintain an action to quiet his title and have the cloud removed."

The statute has no application to the present controversy. The statute was interpreted in the case of *Shepard v. Gibson*, 88 Kan. 305, 128 Pac. 371. The legislative purpose was to change the "sword and shield" rule relating to pleading the statute of limitations and remove the disability of a landowner to make the bar of the statute the basis of affirmative relief. Under the statute he need not wait to be sued. He may sue to obtain an adjudication of the question whether right of action on the mortgage exists or has become barred. But it was not the purpose of the legislature to authorize more than adjudication of status of the mortgage—whether alive or dead—and permit extinguishment of either existing right or existing remedy. The extent of the remedy afforded by the statute was noted in the case of. *Berkley v. Idol*, 91 Kan. 16, 136 Pac. 923. In that case the vendee of land under a contract to purchase did not pay for the land. After action to recover the debt was barred he brought an action to quiet title on the ground action to recover the debt was barred. The court held the action could not be maintained. In the opinion it was said:

"A vendee of lands who has not paid the consideration cannot maintain an action for specific performance, or to quiet his title against the vendor, without paying the amount due. He who seeks equity must do equity. A recent statute (Laws 1911, ch. 232) allowing a mortgagor to maintain an action to quiet title where the mortgage debt is barred by limitations was construed in *Shepard v. Gibson*, 88 Kan. 305, 128 Pac. 371. It was suggested in the opinion that it was not in the legislative mind to extinguish a cause of action but merely to adjudicate a status, and that under that statute the mortgagor, without waiting for an action by the mortgagee, might take the affirmative to have the vitality of the mortgage determined. It was stated, however, that the judgment in such a case would go no further than would have been awarded in an action brought by the mortgagee." (p. 17.)

In this instance King entered before action to enforce his mortgage was barred. For the court to declare that action on the mortgage is now barred would not help plaintiffs. Notwithstanding the fact that for purpose of foreclosure King's mortgage became a dead instrument while he was in possession, he has an interest in the land which the statute did not extinguish, and he has a remedy by way of action to compel redemption which the statute did not extinguish.

"The taking of possession is a method of payment and is one of the remedies afforded mortgagees to obtain satisfaction of their liens." (*Lumber Co. v. Bowersock,* 109 Kan. 135, 136, 197 Pac. 1104.)

Under all the authorities a mortgagee in possession may remain in possession until the debt is paid, although foreclosure becomes barred by limitation. (*Kelso v. Norton,* 65 Kan. 778, 70 Pac. 896; 34 L. R. A., n. s., 356, n.; 41 C. J. 614, n. 15 [d].)

Plaintiffs contend King did not become a mortgagee in possession because he did not take possession under the mortgage or with a view of enforcing the mortgage, and because he asserted in his pleading that his deed was not a mortgage. Those contentions were fully disposed of by the opinion in the case of *Stouffer v. Harlan,* 68 Kan. 135, 74 Pac. 610. The conclusion of the court was expressed in the syllabus, which reads:

"A mortgagee of real property in possession of the mortgaged premises after condition broken may not be dispossessed without the payment of the mortgage debt, unless his possession was acquired under such circumstances that he ought not in equity to be permitted to retain it."

Plaintiffs contend King did not become a mortgagee in possession because he obtained possession through attornment of plaintiff's tenant, which under the landlord and tenant statute was void. Mrs. Sallee testified as follows:

"After we left the farm we had it rented to Mr. Kerr, and he paid the rent to us. He continued to pay the rent after my husband's death. He paid me a year or two until after we had our trouble, then I quit trying to collect, as I didn't know whether we were entitled to it or not.

.   .   .   .   .   .   .   .   .   .   .   .   .

"I haven't had any tenant on that place for the last five or six years.  .   .   .
"This man Kerr never actually occupied the place, but he lived close to it and farmed it."

King testified as follows:

"I am in possession of the land. I am not living on that land now, the man on it is my tenant. He has been on it as my tenant since about 1924.  .   .   .
"I rented this land to Kerr about four years ago. He lives one-half mile

east from this land. In 1924 I went out and rented him the land. I did not know, as a matter of fact, that he had already been occupying that land. I did not know the land had been cultivated before I went out to rent it to Kerr."

The foregoing is all the testimony abstracted relating to the manner in which King acquired possession. It fails to establish corruption of the tenant by King, or bad faith on his part, or delivery of possession to King by Kerr while Kerr was a tenant in possession under plaintiffs.

The court found that Mrs. Sallee and Kerr recognized each other as landlord and tenant until 1924. The contention of King's successors that the finding goes beyond the evidence is justified by the abstract. The court also found that Mrs. Sallee knew Kerr was King's tenant from 1924 on, and made no objection. Plaintiffs contend there was no evidence to justify this finding. The finding doubtless rests on Mrs. Sallee's testimony that she quit trying to collect rent because she did not know whether she was entitled to rent, and she had no tenant on the place for five or six years preceding the trial in May, 1928. The result is the same whether there was or was not evidence to sustain the findings just discussed, or either of them. There is still no evidence that, as a tenant in possession of the premises under lease from plaintiffs, Kerr, during a term of known duration and in renunciation of his landlord's title, surrendered the premises to King. (See *Myers v. Clark*, 115 Kan. 418, 223 Pac. 287.)

Plaintiffs say the judgment did not protect their interests. Judgment was rendered pursuant to the following conclusions of law:

"3. The plaintiffs cannot maintain an action to quiet title against the defendant without having paid or tendered the amount due to defendant.

"4. There is due and owing from plaintiffs to defendant the sum of $905.20 as principal and interest on the original loan, and $71.22 as taxes paid by defendant, together with interest thereon at 6 per cent from the date they were paid, less $29.60 rents collected by defendant, with interest at 6 per cent from December, 1926, or $31.25.

"5. The plaintiffs are the owners of the equitable title to the real property in question, and are entitled to reconveyance or cancellation of the defendant's interest upon the payment of the amounts found due, with interest at 6 per cent from date of judgment."

The court could say no more. Plaintiffs did not ask to redeem. They want the money and the land too. The judgment permits them to get the land on payment of the balance due on the King mortgage.

The judgment of the district court is affirmed.