NOT DESIGNATED FOR PUBLICATION

No. 118,712

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FAIRFAX PORTFOLIO, L.L.C.,
*Appellant*,

v.

CAROJOTO, L.L.C., ROSANA PRIVITERA BIONDO,
ANTHONY L. PRIVITERA II, and CARL PRIVITERA,
*Appellees.*

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed March 1, 2019. Reversed and remanded.

*Douglas J. Patterson*, of Property Law Firm, LLC, of Leawood, for appellant.

*Christopher J. Sherman* and *Jon W. Gilchrist*, of Payne & Jones, Chartered, of Overland Park, for appellees.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

PER CURIAM: Through a succession of assignments from the original lender, Carojoto, LLC became the holder of a promissory note, mortgage, and other security documents that encumbered commercial real estate in Wyandotte County owned by Fairfax Portfolio, LLC (Fairfax). Fairfax was in default, so Carojoto entered the property and took possession, excluding Fairfax. Carojoto later filed an action to foreclose on the property and was granted judgment for that relief. In a subsequent suit against Carojoto, LLC, Rosana Biondo, Anthony Privitera II, and Carl Privitera (collectively Carojoto), Fairfax claimed occupation of the property by Carojoto prior to seeking authority from

1

the court was wrongful and caused it damages. Fairfax now appeals from the district court's order granting Carojoto's motion to dismiss those claims.

## FACTS AND PROCEDURAL BACKGROUND

Fairfax owned property in Wyandotte County, subject to debt evidenced by a promissory note (Note) that was secured by a mortgage on the real estate (Mortgage) and a security agreement covering personal property. In May 2012, Carojoto became the owner of the Note, Mortgage, and related loan documents. Fairfax does not dispute it was in default under the terms of the Note.

In June 2012, Fairfax learned that Carojoto had placed signs on Fairfax's buildings which stated that Carojoto, as lender, had obtained possession of the property. Carojoto announced to third parties that it was making improvements to the property and was looking for tenants. Carojoto also changed the locks on the property, excluding Fairfax from entry and precluding or severely limiting Fairfax's ability to show the property to potential lessees.

Carojoto then filed a petition in the Wyandotte County District Court to take judgment on the Note and foreclose on the Mortgage, which the district court granted in February 2013. Just over a year later, Fairfax sued Carojoto, alleging it improperly took possession of the property which caused Fairfax to suffer damages. Carojoto filed a motion to dismiss Fairfax's claims, arguing it had the right to take possession of the property in the event of default, through the following provision in the remedies portion of the Mortgage:

"Upon the occurrence of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time

2

and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender . . . (g) enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom . . . and thereupon Lender may exercise all rights and powers of Borrower with respect to the Property."

The district court granted Carojoto's motion to dismiss on the basis of the Mortgage provision, Fairfax's default, and the fact the property was vacant. Fairfax timely appeals.

## ANALYSIS

Fairfax claims the district court committed error when it granted Carojoto's motion to dismiss its suit alleging Carojoto converted the property and engaged in tortious interference with prospective business advantages and relationships.

*Standard of review*

Whether a district court erred in granting a motion to dismiss is a question of law subject to unlimited review. On appeal, this court views the well-pleaded facts in a light most favorable to the plaintiff and assumes those facts and any reasonable inferences as true. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

*Discussion*

Fairfax relies on three Kansas cases to support the contention that its cause of action against Carojoto was viable, notwithstanding the remedies provisions in the Mortgage. Carojoto rests its argument principally on a claim of contractual authority to enter the property and exclude Fairfax, backed up by one case from our Supreme Court.

Fairfax claims support from *Kelso v. Norton*, 65 Kan. 778, 70 P. 896 (1902), *Hoelting Enterprises v. Trailridge Investors, L.P.*, 17 Kan. App. 2d 777, 844 P.2d 745 (1993), and *In re Bryant Manor, LLC*, 422 B.R. 278 (Bankr. D. Kan. 2010). At the outset, we note Fairfax's citation to *Bryant Manor* refers only to a quotation by that court from *Hoelting*. *Bryant Manor* offers no additional, independent analysis to support Fairfax's argument. Similarly, because of the state-specific nature of foreclosure law and the existence of controlling precedent from our courts, we will focus on the *Walters* case that Carojoto cites, rather than those it offers from other jurisdictions. We move, then, to consideration of these cases.

*Kelso v. Norton*

*Kelso* was an action in ejectment that arose from a sale of real estate in July 1887. Kelso owned land he sold to Norton who paid a down payment and, with his wife, signed two promissory notes for the balance, one to be paid in a year, the other in two years. The Nortons also signed a mortgage securing the unpaid balance. The Nortons then failed to pay the taxes on the land and paid nothing on either of the notes as they matured. As a result, in September 1889, Kelso filed suit to foreclose his mortgage on the property.

A summons, signed by the clerk of the court, was personally served on both of the Nortons. The summons, however, lacked the impression of the seal of the court. The Nortons made no appearance in the case and, at the end of December 1889, the court

4

granted Kelso judgment for the unpaid amounts and foreclosure of the mortgage. In April 1890, after the necessary notice of the sale, the sheriff sold the property to Kelso. Shortly after, Kelso paid the costs of the suit and the three years of taxes that were owed. The court confirmed the sale and directed delivery of a sheriff's deed, which was given to Kelso in June 1890.

Two years later Norton (the husband) died and his wife passed on a year later, both intestate, leaving two minor children. There was no administration of either estate. Through a tenant, Kelso recovered possession of the land and thereafter received rents and profits from it and continued to pay the taxes owed. The surviving children filed suit to remove Kelso from the land and recover the property. The district court held that everything after the filing of the foreclosure petition was void because "[t]he summons, for want of a seal, was a nullity." 65 Kan. at 781. The district court further held the lack of a valid judgment meant the notes and mortgage never merged into a judgment and sufficient time had passed for the debt to be barred, precluding it from being the basis for an equitable claim on the land. The court granted recovery of the land to the Norton heirs, along with the excess of profits earned over the taxes Kelso paid, and Kelso appealed. 65 Kan. at 781-82.

In holding the land would return to Kelso, our Supreme Court described the nature of the relationship between mortgagor and mortgagee under Kansas law:

> "At common law, a mortgagee was entitled to possession and to recover possession from the mortgagor upon condition broken. In this state, by force of statute, a mortgage retains but few, if any, of its common-law attributes. It is a mere security contract, incident to the debt. The mortgagor, both before and after default, is entitled to the possession of the premises. The only legal right of the mortgagee is to foreclose the equity of redemption and obtain a decree of sale in satisfaction of his debt. While such are the legal rights of the mortgagor and mortgagee in this state, it does not follow that these legal rights may not be changed or waived by agreement, express or implied. If the mortgagor consents to

the mortgagee's taking possession of the premises for the better security of his debt, and the mortgagee does take possession, it is clear that the possession thus taken will constitute 'a mortgagee in possession.'

"In the case at bar, the foreclosure proceedings being, as we have heretofore conceded, abortive and void, the mortgagors were under no legal obligation to yield possession to the mortgagee, but might have stood upon their legal rights and refused to surrender possession until a valid foreclosure decree and sale were obtained and a deed and writ of assistance based thereon had issued to place the purchaser in possession. Upon this legal right, however, they did not insist, but acquiesced in the proceedings had and the possession taken thereunder by the purchaser. Hence, they and those claiming under them must be held to have waived their legal right to possession of the mortgaged premises and to have assented to the possession taken by the mortgagee as purchaser at the sale." 65 Kan. at 782-83.

*Hoelting Enterprises v. Trailridge Investors, L.P.*

Trailridge secured repayment of a loan of over $5 million from Hoelting's predecessor in interest with a mortgage on an apartment complex. Trailridge executed two notes, a mortgage, and an agreement for an assignment of rents, along with a security agreement covering personal property. The mortgage declared that, in the event of a default, Hoelting was entitled to immediate possession of the property and rents. In the separate Assignment of Rents Agreement, Hoelting was given specific authority to take possession of the property and collect rents if Trailridge defaulted. In the mortgage, Trailridge also waived its redemption rights. Trailridge did default and about two months later Hoelting filed a petition for foreclosure. Hoelting promptly filed an application for immediate possession of the property and rents or appointment of a receiver for the rents. Before the district court could rule on that application, Trailridge filed a petition for reorganization in bankruptcy.

After Trailridge's bankruptcy was dismissed because its reorganization plan was not confirmable, Hoelting again asked the district court for possession and rents. The

6

district court ultimately held Hoelting was not entitled to the rents, and Hoelting appealed.

The court in *Hoelting* elucidated the applicable principles for the dispute:

"Discerning the effect of an assignment of rents mortgage clause is difficult in Kansas because Kansas is a 'lien theory' jurisdiction, not a 'title theory' jurisdiction:

"'Under Kansas law, a mortgage is not a conveyance of an interest in land. "[T]he mortgagee acquires no estate whatever in the property, either before or after condition broken, but acquires only a lien securing the indebtedness described in the instrument."'

"In a 'title theory' jurisdiction, on the other hand, the mortgage is viewed as a form of title to property. *In lien theory states, a mortgagee is not entitled to immediate possession of the property upon default because the mortgage is merely a lien and not a form of title.*

"*Under Kansas law, therefore, a purely executory agreement alone is not effective to vest in a mortgagee the right to rents and profits.* The right to rents and profits may vest in a mortgagee, however, if (1) the mortgagor defaults and the court appoints a receiver, or (2) the mortgage assigns the rents and the mortgagee reduces the rents to his possession by proper legal action. Proper legal action that may vest in a mortgagee the right to rents and profits pursuant to such an assignment includes a court's appointment of a receiver, and a mortgagor's voluntary consent to the mortgagee obtaining possession of the rents. [Citations omitted.]" (Emphases added.) 17 Kan. App. 2d at 782-83.

The court held that although the district court did not appoint a receiver and Trailridge did not voluntarily give up possession of the rents and profits, it was "convinced . . . that a mortgagee's right to receive rents and profits validly assigned to it vests when the mortgagee initiates proper legal action to enforce its right." 17 Kan. App. 2d at 785.

*Walters v. Chance*

In addition to its principal contract-based claim, Carojoto argues *Walters v. Chance*, 73 Kan. 680, 85 P. 779 (1906), describes the authority under which it took possession of Fairfax's property before filing its suit for foreclosure. *Walters* centered on a parcel of real estate that was held subject to a mortgage securing unpaid debt, was conveyed multiple times, and ultimately was abandoned with the debt and taxes unpaid. The mortgagor took possession and claimed entitlement in part on the basis of the unpaid debt. The Supreme Court summarized the sequence of events:

> "The land in question had been sold and deeded for the taxes of 1893. The owners had
> paid no subsequent taxes. No interest had been paid on the mortgage debt after 1895. In
> February, 1901, the land was unoccupied and 'abandoned,' as stated by defendant in his
> answer. The mortgagee went quietly and peaceably into possession, under his mortgage,
> and continued therein without objection until this action was commenced—September,
> 1903." 73 Kan. at 686.

Although the *Walters* court stated the only generally applicable rule was that it was permissible for a mortgagee to enter a property with the explicit consent of the mortgagor, the court then described another more narrow, but acceptable, set of circumstances: "If, after condition broken, the premises are unoccupied, the mortgagee may, if he can do so peaceably, enter into the possession under his mortgage; and he cannot be ejected therefrom by the owner until his mortgage lien has been fully satisfied." 73 Kan. at 685-86.

Other decisions by our courts, dating from the earliest days of our state, address the nature of the relationship of mortgagor and mortgagee, as in the following:

> "In this State, a clear sweep has been made by statute. The common law attributes of
> mortgages have been wholly set aside; the ancient theories have been demolished; and if

8

we could consign to oblivion the terms and phrases—without meaning except in reference to those theories—with which our reflections are still embarrassed, the legal profession on the bench and at the bar would more readily understand and fully realize the new condition of things. *The statute gives the mortgagor the right to the possession, even after the money is due, and confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises; thus negativing any idea of title in the mortgagee. It is a mere security, although in the form of a conditional conveyance; creating a lien upon the property, but vesting no estate whatever, either before or after condition broken.* It gives no right of possession, and does not limit the mortgagor's right to control it—except that the security shall not be impaired. He may sell it, and the title would pass by his conveyance—subject, of course, to the lien of the mortgagee." (Emphasis added.) *Chick and others v. Willetts*, 2 Kan. 384, 391 (1864).

Almost 20 years later, the court reiterated:

"In this state, a real-estate mortgage conveys no estate or title, in whatever form the mortgage may be drawn; it creates only a lien upon the mortgaged property. And such lien can be enforced only by a judgment or order of the district court. *A holder of a real-estate mortgage cannot, even after condition broken, take possession of the mortgaged property, or of the rents or profits thereof, except by consent of all the parties, or by an action in the district court; and he cannot realize upon his mortgage, except by judgment of such court.* And this is true, whatever the form of the mortgage may be. Even if it were in form a deed absolute, still in its nature and character it would be only a mortgage.

"Where the mortgaged property is not a sufficient security for the mortgage debt, the district court may in some cases appoint a receiver to take charge of the mortgaged property, and to receive the rents and profits thereof, but *in no case can the holder of the mortgage, without suit, and without the consent of the mortgagor or his assignee, take possession of either the real estate mortgaged, or the rents or profits thereof*." (Emphases added.) *Seckler v. Delfs*, 25 Kan. 159, 165 (1881).

Both *Walters* and *Kelso* seem to suggest a mortgagor's absence and failure to assert the right to pre-foreclosure possession can trigger exceptions to the foundational

9

principles described in *Chick* and *Seckler*. Both *Walters* and *Kelso*, however, arose from facts far more extreme than mere vacancy of the premises followed by peaceable entry.

As noted above, in *Walters*, the mortgagee entered onto the unoccupied and abandoned property six years after any interest on the debt had been paid and almost a decade after default, then continued in possession without objection for another two and a half years when a suit for ejectment was filed. In that circumstance, the court held: "If, after condition broken, the premises are unoccupied, the mortgagee may, if he can do so peaceably, enter into the possession under his mortgage; and he cannot be ejected therefrom by the owner until his mortgage lien has been fully satisfied." 73 Kan. at 686.

And Kelso had been in possession for almost a decade before suit was filed to remove him on the basis of the void foreclosure process. The court reiterated the applicable law was that "[t]he mortgagor, both before and after default, is entitled to the possession of the premises. The only legal right of the mortgagee is to foreclose the equity of redemption, and obtain a decree of sale in satisfaction of his debt." *Kelso*, 65 Kan. at 782-83. But the court also stated "[w]hile such are the legal rights of the mortgagor and mortgagee in this state, it does not follow that these legal rights may not be changed or waived by agreement, express or implied." 65 Kan. at 783. Focusing on the need for express or implied consent, the court found:

> "'Where the mortgagor expressly abandons possession, his *assent that the mortgagee might go into possession under his mortgage might well be implied, especially when he allows him to remain in possession for a considerable length of time without objection*. But after all, the assent, express or implied, of the mortgagor, that the mortgagee may take possession under or because of his mortgage, is of the essence of "a mortgagee in possession."'" (Emphasis added.) 65 Kan. at 784.

Carojoto claims Fairfax's loan documents granted it express authority to take possession of the property on default, so long as it could be done peaceably, as described

10

in *Walters*. The facts of this case, however, are considerably different from those in either *Walters* or *Kelso*. Carojoto took its assignment of the loan in May 2012, and within the space of about a month, entered into the property and excluded Fairfax. This was not like *Walters*, where the land was sold at a tax sale, years passed before the unoccupied and abandoned property was entered, and even more time passed before objection was made when a suit for ejectment was filed. And this was not like *Kelso*, where the court found consent for the mortgagee's possession could be implied when "the mortgagor expressly abandons possession" and allows the mortgagee to remain in possession for "a considerable length of time" with no objection. *Kelso*, 65 Kan. at 784. We find nothing in the present facts that could imply Fairfax's consent for Carojoto's entry and, in fact, Fairfax promptly expressed its objection to Carojoto.

The present case falls within the statements of Kansas law expressed in *Chick* in 1864 and *Seckler* in 1881: "A holder of a real-estate mortgage cannot, even after condition broken, take possession of the mortgaged property, or of the rents or profits thereof, except by consent of all the parties, or by an action in the district court." *Seckler*, 25 Kan. at 165. Over 100 years later, this court confirmed in *Hoelting* that the principle still held, stating: "In lien theory states, a mortgagee is not entitled to immediate possession of the property upon default because the mortgage is merely a lien and not a form of title" and "a purely executory agreement alone is not effective to vest in a mortgagee the right to rents and profits." *Hoelting*, 17 Kan. App. 2d 783.

Carojoto's reliance on the provisions of executory agreements is unsupported in our law, and the facts do not support an exception arising from either express or implied consent by Fairfax. Carojoto's path was first to file its action in the district court, then seek its remedies for the default. Fairfax may or may not be able to prove its claims, but we must view Fairfax's petition in the most favorable light and take the facts and reasonable inferences that may be drawn from those facts to be true. We find the district court's dismissal was error.

11

Reversed and remanded.